UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 12 - 2988**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JING ZHANG and WOMEN'S RIGHTS　　　　　:　　Docket No.:
IN CHINA,

　　　　　　　　　Plaintiffs,　　　　　　　　:　　**COMPLAINT**

　　　　　- against -　　　　　　　　　　　:　　**ECF CASE**

JENZABAR, INC., THE JENZABAR　　　　　:
FOUNDATION, INC., ALL GIRLS ALLOWED,
INC., and LING CHAI,　　　　　　　　　　:　　**PLAINTIFFS DEMAND**
　　　　　　　　　　　　　　　　　　　　　　　**TRIAL BY JURY**

　　　　　　　　　Defendants.　　　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

REYES, M.J

　　　　　Plaintiffs, Jing Zhang ("Zhang") and Women's Rights in China ("WRIC")

(collectively "Plaintiffs"), by their attorneys Alterman & Boop LLP and Law Office of

Kevin Mintzer P.C., for their Complaint against Defendants Jenzabar Inc., The Jenzabar

Foundation, Inc. ("Jenzabar Foundation"), All Girls Allowed Inc. ("AGA"), and Ling

Chai ("Chai") (collectively, "Defendants"), allege as follows:

### NATURE OF THE ACTION

　　　　　1.　　Plaintiffs bring this action against Defendants to remedy discrimination on

the basis of creed in the terms, conditions and privileges of employment and retaliation in

violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*

(the "City Law").

　　　　　2.　　Plaintiff Zhang is a journalist and activist who has devoted her life to

freedom, democracy, and human rights.  The government of China imprisoned Plaintiff

for five years because of her work promoting freedom and democracy.

3.      Since 1997, Plaintiff Zhang has lived in New York and continued her advocacy work. In 2007, Plaintiff Zhang created a not-for-profit organization, Women's Rights in China, to promote and advance the political economic, social, and cultural rights of women and children in China.

4.      Defendant Ling Chai, the co-founder of Jenzabar Inc. and Defendant AGA, purports to share Plaintiff Zhang's commitment to promoting human rights in China, including opposing China's infamous "one child" policy.

5.      In 2010, Defendants hired Plaintiff Zhang as their employee to continue her work promoting human rights in China. Defendants also agreed to and did provide funding support for the activities of Plaintiff WRIC.

6.      From May 2010 through March 2012, Plaintiffs and Defendants worked together to advocate on behalf of girls and mothers in China and to oppose China's human rights abuses.

7.      Unfortunately, Defendant Chai, who professes to be a devout Christian, repeatedly expressed concern to Plaintiff Zhang that she was insufficiently religious and ultimately required as a condition of her employment that Plaintiff Zhang participate in daily prayers and practice her faith as preferred by Defendant Chai.

8.      Although Plaintiff Zhang made numerous efforts to work with Defendants despite the unlawful and unreasonable requests for her to change her religious practices, Plaintiff Zhang ultimately made it clear that she would not change her religious beliefs in order to satisfy Defendants' preferences. As a result, Defendants terminated Plaintiff Zhang's employment. In addition, Defendants terminated all funding support to Plaintiff WRIC, which required the shut down of its operations in China.

2

9.      As described in greater detail below, Defendants actions in forcing Plaintiff Zhang to choose between her job and practicing her religious beliefs as she believed appropriate constitute an egregious violation of the anti-discrimination and anti-retaliation provisions of the New York City Human Rights Law.  In addition, Defendants further violated these same provisions by terminating the funding of Plaintiff WRIC because of WRIC's association with Plaintiff Zhang.

## PARTIES

### Plaintiffs

10.      Plaintiff Jing Zhang resides in Queens County and is a citizen of New York State.

11.      Plaintiff WRIC is a not-for-profit New York corporation with its principal place of business located in Flushing, New York.

12.      Plaintiff WRIC is a person defined by the City Law § 8-102(1) and, as such, is protected by the City Law's anti-discrimination and anti-retaliation provisions.

### Defendants

13.      Upon information and belief, Defendant Jenzabar Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business is in Massachusetts.

14.      Upon information and belief, Defendant Jenzabar Inc. provides software, strategies and services to higher education institutions located across the United States and also engages in various philanthropic and charitable activities.

3

15.     Upon information and belief, Defendant Jenzabar Inc. is an employer defined by the City Law § 8-102(5) insofar as it employs more than four employees.

16.     Upon information and belief, Defendant Jenzabar Foundation, Inc. is incorporated in Massachusetts as a non-governmental, not-for-profit, private foundation and has its principal place of business is in Massachusetts.

17.     Upon information and belief, Defendant Jenzabar Foundation received its initial funding from Jenzabar Inc. and only recently began obtaining donations from other sources.

18.     Upon information and belief, Defendant Jenzabar Foundation is a public charity and educational organization that primarily issues grants to institutions of higher education and other charitable organizations across the United States.

19.     Upon information and belief, Defendant Jenzabar Foundation is an employer defined by the City Law § 8-102(5) insofar as it employs more than four employees.

20.     Upon information and belief, Defendant All Girls Allowed Inc. is a not-for-profit Massachusetts corporation and its principal place of business is in Massachusetts.

21.     Upon information and belief, Defendant AGA is an initiative of Defendant Jenzabar Foundation set up in July 2010 and seeks to oppose China's One Child Policy.

22.     Upon information and belief, Defendant AGA is an employer defined by the City Law § 8-102(5) insofar as it employs more than four employees.

23.     Upon information and belief, Defendants Jenzabar Inc., Jenzabar Foundation, and AGA are effectively operated and managed as a single entity.  For

4

example, employees of Jenzabar Foundation and AGA have been paid by Jenzabar Inc. and are subject to all of the employment practices and policies of Jenzabar Inc. Moreover, upon information and belief, the Jenzabar Foundation and AGA are controlled and operated by the senior management of Jenzabar Inc.

24.     Upon information and belief, Defendant Ling Chai is a citizen of Massachusetts.

25.     Upon information and belief, Defendant Chai is the founder, President and Chief Operating Officer of Jenzabar Inc., the founder and Chairman of the Board of Advisors for the Jenzabar Foundation, and the founder and Director of Operations of AGA.

26.     Upon information and belief, at all pertinent times, Defendant Chai exercised managerial or supervisory responsibility over Plaintiff Zhang.

JURISDICTION AND VENUE

27.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332.

28.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

29.     Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391(a).

30.     A copy of this Complaint has been served on the New York City Commission on Human Rights and the New York City Corporation Counsel, pursuant to N.Y.C. Admin. Code § 8-502(c).

5

# FACTUAL ALLEGATIONS

A.     Background of Plaintiff Zhang's Hiring

31.     On or about November 10, 2009, Plaintiff Zhang testified before the United States Congress's Tom Lantos Human Rights Commission regarding China's One Child Policy. Defendant Chai was invited by Plaintiff Zhang to attend and also translated Zhang's testimony.

32.     Subsequent to the hearing, Defendant Chai sought advice from Plaintiff Zhang about becoming involved in advocacy work promoting women's rights, and specifically, protecting the victims of China's One Child Policy.

33.     Thereafter, Plaintiff Zhang and Defendant Chai began discussions concerning how Plaintiff WRIC and Defendant AGA, which at the time Defendant Chai had yet to officially organize, could work together.

34.     In or about May 2010, Defendant Jenzabar Inc. offered in writing Plaintiff Zhang a part-time position as the Director of China and Overseas Communities reporting directly to Defendant Chai.

35.     The contract, written in English, specified that Plaintiff would be subject to Defendant Jenzabar Inc.'s policies and she would be "instrumental in assisting Jenzabar to achieve its business plan." The employment contract further provided that Plaintiff Zhang was entitled to participate in Defendant Jenzabar Inc.'s health and life insurance plans.

36.     In addition, for the duration of Plaintiff Zhang's employment, Jenzabar Inc. paid Plaintiff Zhang's salary.

6

37.    At all relevant times, Plaintiff Zhang performed services for Defendants out of an office in Queens, New York. Prior to and shortly after her employment with Defendants began, Plaintiff Zhang developed four different programs that focused on the prevention of forced abortions, the education of abandoned female orphans, and the reuniting of trafficked children with their families.

38.    One of the more important aspects of the programs was that Defendants provided financial assistance to families that have baby girls in the countryside of China. Particularly, the families in the Baby Shower Gift program were promised a specific amount of money each month from the time their baby is born until he or she reached one year.

39.    At the beginning of her employment, Plaintiff Zhang discussed and presented her research regarding the feasibility of the programs to Defendant Chai, who ultimately approved all four programs.

40.    Defendant Chai and Plaintiff Zhang made a verbal agreement that, for the duration of Plaintiff Zhang's employment, Defendant Jenzabar Foundation would fund the four programs by making grants to Plaintiff WRIC, and that the level of funding would be determined on a monthly basis depending on need and after a review of a monthly report that was drafted and submitted by Plaintiff Zhang.

41.    Thereafter, Defendant Jenzabar Foundation sent a monthly check to Plaintiff WRIC, which then distributed the money to program recipients and provided salaries for the field workers in China as well as the operation expenses for the New York office.

7

42.     The programs became an success. What started with a few dozen families, eventually grew to thousands. Some of the families who depended on this aid traveled significant distances by foot each month to receive the aid. Also, the field workers in China journeyed three days to get the funds to the appointed locations for pick up.

43.     In or about October 2010, Jenzabar Inc. provided Plaintiff Zhang another written agreement, in English, in which she was offered a full-time position as Director of China and Overseas Communities, reporting directly to Defendant Chai.

44.     The contract again specified that Plaintiff would be subject to Defendant Jenzabar Inc.'s policies and that she would be "instrumental in assisting Jenzabar to achieve its business plan." The contract further provided that Defendant Plaintiff Zhang was entitled to participate in Defendant Jenzabar Inc.'s health and life insurance plans.

45.     Throughout her employment, Plaintiff Zhang managed the four programs described above and worked tirelessly on behalf of girls and mothers in China by educating abandoned girls, rescuing trafficked children, and defending mothers.


B.      Defendants Require Plaintiff to Change Her Religious Practices

46.     In or about August 2010, Defendant Chai informed Plaintiff Zhang that she should set up a short period of time in the New York office for prayer and devotion.

47.     Shortly thereafter, in or about October 2010, Defendant Chai specified that everyone in the New York office, including plaintiff Zhang, would be required to set aside one hour each week for Bible study, which included prayer, prayer requests and testimonials.

8

48.     Further, in or about the beginning of 2011, Defendant Chai informed Plaintiff Zhang that the New York office, including Plaintiff Zhang, was required to participate in Bible study while on daily conference calls with Defendant Chai and the Boston office.  Generally, these calls lasted approximately two hours and started with opening prayers, followed by testimonials, prayer requests, and Bible study.

49.     Although there was a short discussion about work issues following the prayers, Plaintiff Zhang understood that she was required to be on the telephone calls during the portions of the call devoted to Bible study.

50.     Plaintiff Zhang complied for a few months because, based on Defendant Chai's comments, it was apparent to her that one of her job requirements was to participate in the conference calls.

51.     Several months later, Plaintiff Zhang complained that the Bible study sessions conflicted with her work because that was the time she generally talked to others in China.  Due to time difference, there were few opportunities during the day to speak with those in China and the long two hour telephone calls took away most of those limited opportunities.

52.     In or about, October 2010, with the approval of Defendants, Plaintiff Zhang hired Yan Xu, an interpreter and translator, to work out of the New York office.

53.     Mr. Xu provided interpretation and translation services and administrative assistance to Defendants on a part-time basis, which included interpreting the morning Bible study telephone calls.

54.     A few months after his employment began Plaintiff Zhang asked Defendant Chai to hire and pay Mr. Xu on a full-time basis.

9

55. Defendant Chai refused because Mr. Xu was a believer of Buddhism and was not Christian.

56. Throughout her employment, Plaintiff Zhang continued to request that Mr. Xu be hired full-time because she needed his help. Although Mr. Xu routinely worked over 40 hours a week, Defendants repeatedly declined to hire Mr. Xu on a full-time basis because he was not a Christian.

57. At the end of 2010, because of the number of receipients in China who received the funds increased, Defendants agreed to increase the amount of money they would fund to the program. Defendants promised Plaintiffs Zhang and WRIC that they would fund a yearly grant in an amount to be determined at the beginning of the year. Under this agreement, the money would be distributed to Plaintiff WRIC on a quarterly basis.

58. Thereafter, in the beginning of 2011, Defendants notified Plaintiff Zhang by email the total amount of money they would grant to Plaintiff WRIC to distribute to the four programs for the year.

59. Further, throughout the year, Plaintiff Zhang occasionally requested additional money because of an unexpected emergency or incident related to one of the programs. Defendants generally approved these requests and sent the requested amount to Plaintiff WRIC.

60. When the money was distributed to the program recipients in China, the money was contained in a red envelope. In or about the middle of 2011, Defendant Chai requested on multiple occassions that they use the programs to spread the gospel and

10

teach Christainity and wanted to insert a religious picture or verse from the Bible in each envelope despite the fact that this was against the law in China.

61.     Beginning in 2011, Defendants began to hold team retreats that employees, including Plaintiff Zhang, were required to attend.

62.     In or about March 2011, Defendants held the first team retreat, which lasted two days. Although Plaintiff Jing was promised the retreat was going to focus on work, the majority of the activities at the retreat were not related to work, but instead focused on prayers and bible studies.

63.     Plaintiff Zhang approached Defendant Chai and asked her when they were going to start talking about work. Defendant Chai responded that they did not have time for work at the retreat.

64.     In or about the summer of 2011, Defendants held a second one-day retreat. Once again, the majority of the time was focused on prayers and Bible study as opposed to work.

65.     Plaintiff Jing informed Brian Lee ("Lee"), Defendant AGA's Executive Director, that if they were not going to spend anytime on work than she could not attend because she needed to concentrate on her work.

66.     As a result, Lee set aside a short amount of time for a question and answer session where Plaintiff Zhang answered questions from the other employees. However, this was a very short period and the majority of the time at the retreat was expended on prayers and Bible studies.

67.     After the retreat, Plaintiff Jing told Lee was was uncomfortable with the prayer sessions and Bible studies.

11

68. In or about the fall of 2011, Defendants held the third retreat of the year. Plaintiff Zhang did not attend because she was uncomfortable with the prayer sessions and bible studies and she wanted to concentrate on her work.

69. Further, in or about January 2012, Defendant Chai and Lee continued to inject their religious beliefs into their work and directed Plaintiff Zhang to change the existing programs into religious programs and to require the field workers in China to be Christian. Defendant Chai stated that she hoped to spread the gospel and that in the future she wanted to require that all the workers and recipients be Chrisitan.

70. In or about January 2012, Defendants notified Plaintiff Zhang by email the amount of grant money they would give to the four programs for 2012. The amount again increased because of an increase in the number of receipients.

C. **Defendants Terminate Plaintiff Zhang's Employment Because of Her Unwillingness to Change Her Religious Beliefs and Practices**

71. In or about February 2012, Defendant Chai and Lee contacted Plaintiff Zhang on more than one occasion to discuss her religious beliefs and practices. During these conversations, Defendant Chai and Lee repeatedly expressed the concern that Plaintiff was insufficiently religious and "not close to God." Both Defendant Chai and Lee advised that Plaintiff Zhang needed to get closer to God and spend more time on Bible studies.

72. In or about February 12, 2012, Plaintiff Zhang met with Defendant Chai and Lee. During this meeting, they informed Plaintiff that she was not a serious Christian who is close to God and that she needed to talk to a pastor and start practicing her religion more devoutly if she wanted to continue working for Defendants.

12

73.     During the meeting, Defendant Chai became upset and stated Plaintiff did not believe in God.   Further, Defendant Chai stated that "Catholics are no good." Defendant Chai also made several disparaging comments about the Virgin Mary.  As Defendant Chai was aware, Plaintiff Zhang was (and remains) and a Catholic.

74.     On or about February 24, 2012, Plaintiff Zhang met with Defendant Chai and Lee, who informed Plaintiff Zhang that despite her achievements she must change her religious practices to more closely reflect their religious practices by, among other things, engaging in daily prayers.  Defendant Chai and Lee also made it clear that, if Plaintiff Zhang did not comply, she would be terminated.

75.     Immediately following the meeting, Plaintiff Zhang was presented with a proposed agreement that required Plaintiff Zhang to choose between two options.

76.     As provided in the agreement, a copy of which is attached hereto as Exhibit A, Plaintiff Zhang's first option was to continue her employment and follow Defendant Chai's religious practices.

77.     Specifically, the proposed agreement stated that Plaintiff Zhang would be required to:

> [E]arnestly seek[] after the Lord Jesus Christ and seeks his will in our work.  If Zhang Jing agrees to the following statements and agrees to seek the will of God in her life on a daily basis through study of God's Word and through prayers, along with regular weekly corporate worship; and if Zhang Jing agrees to the vision that God has given All Girls Allowed to glorify _him_ and to do everything _through his power_ to end gendercide; and if Zhang Jing agrees to making All Girls Allowed her primary work priority – then All Girls Allowed will agree to a one-year evaluation period during which Zhang Jing would continue as Director of Operations.

(Emphasis in original).

78.    Under the proposed agreement, if Plaintiff did not agree to practice her religion as specified by Defendants, her second option was to agree to leave the organization and be terminated.

79.    Under this second option, Defendants provided that they would continue to employ Plaintiff for one year with certain conditions while she sought other employment.

80.    Plaintiff Zhang responded that she did not want to change her religious beliefs and practices and it was not part of her job to practice her religion as preferred by Defendant Chai. Subsequent to this meeting, Plaintiff Zhang spoke to Defendant Chai and reiterated that she did not want to change her religious practices and that she was performing her duties at work in a more than satisfactory manner.

81.    As a result, by letter dated March 9, 2012, Defendants informed Plaintiff Zhang that her employment was terminated effective May 31, 2012, which was significantly shorter than the one year of employment reflected in the original proposal.

82.    Moreover, in the March 9, 2012 letter, Defendants raised criticism of Plaintiff's work for the first time in Plaintiff's almost two years of employment. These performance criticisms were a clear pretext for Defendants' decision to terminate Plaintiff Zhang because she refused to change her religious practices in the manner requested by Defendants.

83.    On or about March 28, 2012, Plaintiffs' counsel notified Defendants that Defendants had violated the anti-discrimination laws, including the City Law, in its treatment of Plaintiff Zhang.

84. As a result and in retaliation for Plaintiff Zhang's protected activity, on or about April 25, 2012, Defendants notified Plaintiff that her termination was effective immediately.

85. Moreover, despite defendants' promises to fund the programs, Defendants ceased sending money to Plaintiff WRIC to distribute to families and workers in China.

86. Defendants' actions as described herein were willful, intentional and malicious, and were conducted with reckless indifference to Plaintiffs' rights secured by the City Human Rights Law.

87. As a direct and proximate consequence of Defendants' unlawful discriminatory and retaliatory conduct as described above, Plaintiff Zhang has suffered a loss of income, benefits, and other forms of compensation, including past and future salary increases.

88. Plaintiff Zhang has further suffered emotional distress and suffering, mental anguish, and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful discriminatory and retaliatory conduct as described above.

89. As a direct and proximate consequence of Defendants' unlawful discriminatory and retaliatory conduct as described above, Plaintiff WRIC has suffered a loss of funding.

FIRST CAUSE OF ACTION
DISCRIMINATION AGAINST PLAINTIFF ZHANG IN VIOLATION OF THE CITY
LAW
(Against All Defendants)

90. Based on the acts and practices set forth above, Defendants unlawfully discriminated against Plaintiff Jing Zhang in the terms and condition of her employment

on the basis of her actual or perceived religious creed, in violation of New York City Human Rights Law §§ 8-107(1)(a) and (3).

91.     As a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above, Plaintiff Zhang has suffered a loss of income, benefits, and other forms of compensation, including past and future salary increases.

92.     Plaintiff Jing Zhang has further suffered emotional distress and suffering, mental anguish, and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above.

93.     Defendants' actions as described herein were willful, intentional and malicious, and conducted with reckless indifference to Plaintiff Zhang's rights secured by the City Human Rights Law.

94.     Defendant Ling is liable as an employer as well as for aiding an abetting the discriminatory practices of Defendants Jenzabar Inc., Jenzabar Foundation, and AGA, in violation of New York City Human Rights Law § 8-107(6).

## SECOND CAUSE OF ACTION
### DISCRIMINATION AGAINST PLAINTIFF WRIC IN VIOLATION OF THE CITY LAW
(Against All Defendants)

95.     At all relevant times, Defendants were aware of the association between Plaintiff Zhang and Plaintiff WRIC.

96.     Based on the acts and practices described above, Defendants unlawfully discriminated against Plaintiff WRIC on the basis of Plaintiff Zhang's actual or perceived religious creed in violation of the New York City Human Rights Law § 8-107(20).

97.     As a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above Plaintiff WRIC has suffered substantial damages.

98.     Defendants' actions as described herein were willful, intentional and malicious, and conducted with reckless indifference to Plaintiff WRIC's rights secured by the City Human Rights Law.

99.     Defendant Ling is liable as an employer as well as for aiding an abetting the discriminatory practices of Defendants Jenzabar Inc., Jenzabar Foundation, and AGA, in violation of New York City Human Rights Law § 8-107(6).

THIRD CAUSE OF ACTION
RETALIATION IN VIOLATION OF THE CITY LAW
(Against All Defendants)

100.    Based on the acts and practices described above, Defendants unlawfully and intentionally retaliated against Plaintiffs because Plaintiff Zhang opposed unlawful discrimination, in violation of the City Human Rights Law § 8-107(7).

101.    As a direct and proximate consequence of Defendants' unlawful retaliatory conduct as described above, Plaintiff Zhang has suffered a loss of income, pension benefits, and other forms of compensation, including past and future salary increases and overtime.

102.    Plaintiff Zhang has further suffered emotional distress and suffering, mental anguish, and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful retaliatory conduct as described above.

103.    As a direct and proximate consequence of Defendants' unlawful retaliatory conduct as described above, Plaintiff WRIC has suffered damages.

17

104.    Defendants' actions as described herein were willful, intentional and malicious, and conducted with reckless indifference to Plaintiff WRIC's rights secured by the City Human Rights Law.

PRAYER FOR RELIEF

Plaintiffs Jing and WRIC respectfully requests that the Court enter judgment:

(a)    Directing Defendants to pay Plaintiff Jing Zhang a monetary judgment, in an amount to be determined at trial, representing compensatory damages, back and front pay and other forms of compensation, including benefits to which the Plaintiff would have been entitled but for Defendants' unlawful conduct in violation of the City Law;

(b)    Directing Defendants to pay Plaintiff WRIC a monetary judgment, in an amount to be determined at trial, representing compensatory damages that Plaintiff WRIC would have received but for Defendants' unlawful conduct in violation of the City Law;

(c)    Directing Defendants to pay punitive damages to Plaintiffs as provided by the City Law;

(d)    Directing Defendants to pay Plaintiffs' attorneys' fees and costs pursuant to the City Law;

(e)    Directing Defendants to pay Plaintiffs pre-judgment interest;

(f)    Awarding such other and further relief as the Court may deem necessary and proper.

18

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiffs

demand a trial by jury in this action.

Dated:       New York, New York
                June 14, 2012

ALTERMAN & BOOP LLP

By: _____

DANIEL L. ALTERMAN
NICOLE DENVER
35 Worth Street – 3rd Floor
New York, New York
(212) 226 – 2800

LAW OFFICE OF KEVIN MINTZER, P.C.

By: _____

KEVIN MINTZER
1350 Broadway, Suite 1400
New York, New York 10018
(646) 843 – 8180

*Attorneys for Plaintiffs JING ZHANG and*
*WOMEN'S RIGHTS IN CHINA*

# EXHIBIT A

**Proposal for Next Steps Between Zhang Jing (Director of Operations) and All Girls Allowed**

March 2, 2012
Issued by Chai Ling (Founder) and Brian Lee (Executive Director)

We are first and foremost very grateful for the work that Zhang Jing has done for All Girls Allowed, coordinating and establishing our programs to rescue girls and mothers from gendercide and from the One-Child Policy. However, over the past 18+ months of working together, we have found that there are some significant differences that appear to be irreconcilable, differences that are preventing All Girls Allowed as an organization to most effectively work in unity towards the vision that God has given us. For these reasons, we propose one of the following scenarios:

1) Scenario #1 – Zhang Jing earnestly seeks after the Lord Jesus Christ and seeks his will in our work
If Zhang Jing agrees to the following statements and agrees to seek the will of God in her life on a daily basis through study of God's Word and through prayer, along with regular weekly corporate worship; and if Zhang Jing agrees to the vision that God has given All Girls Allowed to glorify <u>him</u> and to do everything <u>through his power</u> to end gendercide; and if Zhang Jing agrees to making All Girls Allowed her primary work priority—then All Girls Allowed will agree to a one-year evaluation period during which Zhang Jing would continue as Director of Operations. During this period, there will be monthly reviews to determine whether to continue the evaluation period. Zhang Jing will continue to receive her current salary and benefits, and will receive an additional $1,000/month to assist in the setting up of a home office (as we are not renewing our lease for the New York office in June, 2012).

- I believe that Jesus is the Way, the Truth and the Life, and apart from him nobody can receive eternal life and enter the kingdom of God.
- I believe in the inherent value of human life as created by God before the foundations of the earth.
- I believe that all human life is made in the image of God, both male and female.
- I will seek to maintain a close, intimate walk with the Lord by daily spending time with him in his Word and in prayer, as well as regularly participating in corporate worship.
- I will endeavor to walk continually in the Holy Spirit by faith, with integrity.
- I will pray regularly for the ministry of All Girls Allowed and for the girls and mothers in China.
- I will give glory to God and Jesus as people from all walks of life are drawn to our work.

2) Scenario #2 – Zhang Jing and All Girls Allowed agree that there are irreconcilable differences between the two and that it is best to initiate a transition for Zhang Jing to leave the organization
If Scenario #1 is not palatable or feasible to Zhang Jing, then we will arrange for a one-year period with mediation (beginning March 12, 2012) during which she will seek other employment opportunities and initiate transition from All Girls Allowed. During this time, she will continue to draw a full salary, on condition that the following guidelines are respected:
   a. The All Girls Allowed/Women's Rights in China office in New York does not renew its lease; Zhang Jing begins working out of her home.
   b. Zhang Jing agrees to compile and hand over all of the worker and volunteer contacts in China to Chai Ling and Brian Lee, and Zhang Jing does nothing to sabotage the continuation of the Baby Shower Gift, Orphan Scholarship and Reuniting Children programs currently operating in China.
   c. Zhang Jing agrees to train a new Director of Operations once All Girls Allowed is able to hire one, equipping them to continue the work that has begun, for the sake of the girls and mothers being helped.
   d. Zhang Jing agrees not to slander Chai Ling or All Girls Allowed in any way; All Girls Allowed agrees likewise not to slander Zhang Jing.
   e. Once Zhang Jing has been offered employment at a new organization, she must notify Chai Ling and Brian Lee immediately. The All Girls Allowed salary and benefits for Zhang Jing will end on the day that she begins work at her new place of employment.

f.  Upon departure, Zhang Jing agrees to return all All Girls Allowed funds that were not used and that remain in the Women's Rights in China bank account.

We agree to scenario #_____ above and will respect all of the requirements and provisions therein.

Signed,


_____          _____
Chai Ling                                                        Date


_____          _____
Brian Lee                                                        Date


_____          _____
Zhang Jing                                                       Date