UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                            :

JING ZHANG  and  WOMEN'S  RIGHTS  IN:
CHINA,
                                            :

                                 Plaintiffs,:

                 -against-               :   12 Civ. 2988 (RRM)(RER)
                                            :

                                            :

JENZABAR, INC., THE JENZABAR             :
FOUNDATION, INC., ALL GIRLS ALLOWED,  :
INC., and LING CHAI,                      :
                                            :

                                 Defendants.:

-------------------------------------------------------------- X
--------------------------------------------------------------X
                                            :

ALL GIRLS ALLOWED, INC.,               :

                                            :

                      Counter-claimant, :
                                            :

       -against-                    :

                                            :

JING ZHANG and WOMEN'S RIGHTS       :
IN CHINA,
                                            :

               Counterclaim Defendants. :
                                            :

--------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-
MOTION TO AMEND THE ANSWER**

**GORDON & REES, LLP**
ATTORNEYS FOR DEFENDANTS
90 BROAD STREET, 23RD FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX:    (212) 269-5505

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND..................................................................................3

ARGUMENT ........................................................................................................3

POINT 1      JENZABAR WAS NOT ZHANG'S EMPLOYER AND ZHANG'S
             MOTION MUST BE DENIED ACCORDINGLY .................................3

             A.    JENZABAR WAS NOT PLAINTIFF'S DIRECT EMPLOYER .............4

             B.    THE SINGLE EMPLOYER DOCTRINE IS INAPPLICABLE..............10

             C.    JENZABAR IS NOT LIABLE AS A JOINT EMPLOYER ...................14

POINT II     ZHANG IS NOT ENTITLED TO SUMMARY JUDGMENT WITH
             RESPECT TO HER CLAIMS AGAINST CHAI IN HER INDIVIDUAL
             CAPACITY........................................................................................15

POINT III    ZHANG'S CLAIMS OF RELIGIOUS DISCRIMINATION AND
             RETALIATION AGAINST AGA MUST BE DISMISSED BECAUSE
             AGA IS A RELIGIOUS ORGANIZATION EXEMPT FROM THE
             NYCHRL'S PROHIBITION AGAINST RELIGIOUS
             DISCRIMINATION. .........................................................................16

             A.    AGA HAS NOT WAIVED ITS RIGHT TO ASSERT THE
                   EXEMPTION SET FORTH IN SECTION 8-107(12) ...........................16

             B.    AGA IS A RELIGIOUS ORGANIZATION ENTITLED TO
                   APPLICATION OF THE EXEMPTION SET FORTH IN
                   SECTION 8-107(12)................................................................20

             C.    AGA'S ACTIONS IN THIS CASE FALL WITHIN THE SCOPE
                   OF THE EXEMPTION...............................................................30

POINT IV     ZHANG IS NOT ENTITLED TO SUMMARY JUIDGMENT WITH
             RESPECT TO HER CLAIMS OF DISCRIMINATION.......................31

CONCLUSION....................................................................................................35

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Cases*

Al-Kaysey v. L-3 Servs.
2013 U.S. Dist. LEXIS 141037 (E.D.N.Y. Sept. 27, 2013) ..................................................... 31

Astor Holdings, Inc. v. Roski
325 F. Supp. 2d 251 (S.D.N.Y. 2003) .................................................................................... 19

Brady v. Helmsley
668 N.Y.S.2d 198 (1st Dep't 1998) ......................................................................................... 9

Davis v. New York
316 F.3d 93 (2d Cir. 2002) ............................................................................................... 30, 33

EEOC v. Kamehameha Sch./BishopEstate
990 F.2d 458 (9th Cir. 1993) ................................................................................................ 23

EEOC v. Townley Engineering & Mfg. Co.
859 F.2d 610 (9th Cir. 1988) ........................................................................................... 23, 24

Forman v. Davis
317 U.S. 178 (1962) ............................................................................................................... 18

Fried v. LVI Servs.
2011 U.S. Dist. LEXIS 57639 (S.D.N.Y. May 23, 2011) ...................................................... 14

Gore v. RBA Group, Inc.
2008 U.S. Dist. LEXIS 25912 (S.D.N.Y. March 31, 2008) ................................................... 14

Goyette v. DCA Advertising
830 F. Supp. 737 (S.D.N.Y. 1993) ..................................................................................... 5, 7

Gryga v. Guzman
991 F. Supp. 105 (S.D.N.Y. 1998) ................................................................................... 9, 10

Guzman v. News Corp.
2013 U.S. Dist. LEXIS 155026 (S.D.N.Y. Oct. 28, 2013) ................................................ 12, 13

Herman v. Blockbuster Entm't Group
18 F. Supp. 2d 304 (S.D.N.Y. 1998) .................................................................................... 11

Houston v. Fidelity
1997 U.S. Dist. LEXIS 2366 (S.D.N.Y. Mar. 4, 1997) ........................................................... 7

## TABLE OF AUTHORITIES

**Page**

Kausal v Educational Prods. Info. Exch. Inst.
    105 A.D.3d 909 (2d Dep't 2013) ....................................................................... 8, 9

Kelly v. A1 Tech.
    2010 U.S. Dist. LEXIS 37807 (S.D.N.Y. April 8, 2010) ...................................... 19

LeBoon v. Lancaster Jewish Community Center Ass'n
    503 F.3d 217 (3d Cir. 2007) ............................................................................... 25

Lihli Fashions Corp. v. NLRB
    80 F.3d 743 (2d Cir. 1996) ................................................................................. 10

Lihuan Wang v. Phoenix Satellite TV US, Inc.
    976 F. Supp. 2d 527 (S.D.N.Y. 2013) ............................................................... 4, 5

Local 802, Associated Musicians v. Parker Meridien Hotel
    145 F.3d 85 (2d Cir. 1998) ................................................................................. 19

Lown v. Salvation Army, Inc.
    393 F. Supp. 2d 223 (S.D.N.Y. 2005) ............................................................... 30

Lusk v. Foxmeyer Health Corp.
    129 F.3d 773 (5th Cir. 1997) .............................................................................. 32

Monahan v. N.Y. City Dep't of Corrections
    214 F.3d 275 (2d Cir. 2000) ............................................................................... 18

Murray v. Miner
    74 F.3d 402 (2d Cir. 1996) ............................................................................ 10, 11

N.L.R.B. v. Solid Waste Servs., Inc.
    38 F.3d 93 (2d Cir. 1994) ................................................................................... 14

People v. Rosano
    69 A.D.2d 643 (2d Dep't 1979) ......................................................................... 17

Polidori v. Societe Generale Group
    2006 N.Y. Misc. LEXIS 3787 (Sup. Ct., N.Y. Co. Nov. 27, 2006) ....................... 4

Robins v. Max Mara, U.S.A., Inc.
    923 F. Supp. 460 (S.D.N.Y. 1996) ....................................................................... 5

Scheiber v. St John's Univ.
    84 N.Y.2d 120 (1994) .................................................................................... 21, 22

## TABLE OF AUTHORITIES

**Page**

Spencer v. World Vision, Inc.
  633 F.3d 723 (9th Cir. 2011) ....................................................... 24, 25, 27, 28, 29, 30

State Div. of Human Rights ex rel. Emrich v. GTE Corp.
  109 A.D.2d 1082 (4th Dep't 1985) ............................................................................ 6

Turowski v. Triarc Cos., Inc.
  761 F. Supp. 2d 107 (S.D.N.Y. 2011) ................................................................ 16, 32

Velez v. Novartis Pharms. Corp.
  244 F.R.D. 243 (S.D.N.Y. 2007) ............................................................................ 11

Weber v. City of New York
  973 F. Supp. 2d 227 (E.D.N.Y. 2013) ..................................................................... 34

Williams v. New York City Hous. Auth.
  61 A.D.3d 62 (1st Dep't)
  lv. denied, 13 N.Y.3d 702 (N.Y. 2009) ................................................................... 32

*Statutes*

New York City Administrative Code
  section 8-107 ................................................... 3, 16, 17, 18, 19, 20, 21, 23, 25, 30, 31

New York City Administrative Code
  sections 8-101, *et seq.* ............................................................................................ 1

New York Executive Law
  section 296 ......................................................................................................... 18, 21

*Rules*

Federal Rules of Civil Procedure
  rule 15 ................................................................................................................... 18

Local Civil Rules
  rule 56.1 ................................................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiffs Jing Zhang ("Zhang") and Women's Rights in China ("WRIC") (collectively "Plaintiffs") bring this action raising claims of religious discrimination and retaliation under the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101, *et seq*., against defendants Jenzabar, Inc. ("Jenzabar"), The Jenzabar Foundation, Inc. ("Jenzabar Foundation"), All Girls Allowed, Inc. ("AGA"), and Ling Chai ("Chai") (collectively, "Defendants").   Specifically, Zhang, who self-identifies as Catholic, alleges that Defendants discriminated against her by conditioning her continued employment with AGA on Zhang's adherence to Christian beliefs.   Zhang further alleges that Defendants retaliated against her by terminating her employment after she complained about the alleged religious discrimination. Plaintiff Zhang has now moved for partial summary judgment with respect to her religious discrimination claims against Jenzabar, AGA and Chai.   For the reasons set forth herein, Zhang's motion must be denied.

First, Zhang's request for summary judgment against Jenzabar must be denied because it was not her "employer" within the meaning of the NYCHRL.   To establish that a particular entity is an "employer" under the NYCHRL, a plaintiff must demonstrate, first and foremost, that the entity had the authority to control the employee's conduct.   Here, the record clearly establishes that Zhang was employed by AGA, not Jenzabar.   Zhang reported to AGA's Executive Director, was assigned tasks solely by AGA employees, and performed absolutely no work on behalf of Jenzabar, a wholly separate and distinct for-profit entity.   Additionally, to the extent that Zhang argues that Jenzabar may be held liable under the "single employer" doctrine, her argument must be rejected because she cannot establish that the two entities were sufficiently "interrelated" to justify holding Jenzabar liable under this theory.   Finally, to the extent Zhang argues that Jenzabar was her "joint employer," her claim once again fails because she cannot

satisfy the applicable standard.  Specifically, Zhang cannot demonstrate that the operations of the two entities were interrelated, or that they shared common control over issues regarding labor relations.

Second, Zhang's claims against Chai must be dismissed because Chai may only be held liable in her individual capacity if Plaintiff can establish liability on the part of either Jenzabar or AGA.  Because she can make no such showing with respect to the alleged institutional employers, Zhang's claims against Chai must also be dismissed.

Third, Zhang's claims of religious discrimination and retaliation against AGA must be dismissed because AGA is a "religious organization" and, therefore, is exempt from the NYCHRL's prohibition against discrimination on the basis of religion.  Initially, Zhang argues that Defendants' have waived this defense because it was not included in their Amended Answer.  However, the religious exemption need not be pled in the answer, as it is not defined as an affirmative defense under the statute.  Additionally, Defendants did plead the exemption as a defense, albeit with a typographical error.  Finally, to the extent that the defense must be re-pled, Zhang has provided no justification why Defendants should not be granted leave to amend their Answer at this time.

As to the issue of applicability of the exemption, AGA's mission is undeniably religious in nature, and Zhang's allegations to the contrary are wholly without merit.  Zhang, herself, has acknowledged AGA's religious mission on numerous occasions, and only found fault with that mission when it potentially conflicted with her work on behalf of WRIC.  Indeed, Zhang's claim that she was subjected to religious discrimination is disingenuous at best, as she acknowledged her own religious beliefs when it benefitted her, and denied them when it did not.  Throughout the course of her employment with AGA, Zhang increasingly demonstrated that her views were

not aligned with AGA's mission, and she repeatedly refused to participate in or implement practices that were essential to AGA's work.  AGA simply cannot be forced to continue to employ an individual who consistently refuses to carry out the requirements of her position. Accordingly, Zhang's claims against AGA must be dismissed.

Finally, Plaintiff's motion must fail for the additional reason that she cannot establish a claim of religious discrimination against the Defendants.  Here, Plaintiff has failed to demonstrate that she was treated less well or terminated because of a *bona fide* religious belief. Instead, the record clearly demonstrates that Zhang professed to share AGA's religious convictions when it was convenient for her, and declined to do so when it was not.  Accordingly, for the reasons set forth herein, Zhang's request for partial summary judgment must be denied.

## FACTUAL BACKGROUND

For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to the Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, dated June 27, 2014, which was submitted in support of Defendants' Motion for Summary Judgment.

## ARGUMENT

### POINT I

### JENZABAR WAS NOT ZHANG'S EMPLOYER AND ZHANG'S MOTION MUST BE DENIED ACCORDINGLY

Zhang first argues that she is entitled to summary judgment with respect to her religious discrimination claim against Jenzabar because Jenzabar was her employer within the meaning of the NYCHRL.  See Memorandum of Law in Support of Plaintiff Jing Zhang's Motion for Partial Summary Judgment (hereinafter Plaintiff's MOL) at 12-20.  "The plain terms of § 8-107(1)(a) [of the NYCHRL] make clear that the provision's coverage only extends to employees, for an

3

'employer' logically cannot discriminate against a person in the 'conditions or privileges of employment' if no employment relationship exists." Lihuan Wang v. Phoenix Satellite TV US, Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013).   Thus, in order to hold Jenzabar liable for religious discrimination or retaliation under the NYCHRL, Plaintiff first must demonstrate that Jenzabar was her "employer" within the meaning of the statute.   See, e.g., Polidori v. Societe Generale Group, No. 113960/05, 2006 N.Y. Misc. LEXIS 3787, at *24 (Sup. Ct., N.Y. Co. Nov. 27, 2006).   As discussed below, because Zhang cannot demonstrate that Jenzabar was her "employer" within the meaning of the statute, her claims against Jenzabar fail as a matter of law and must be dismissed.

**A.      Jenzabar Was Not Plaintiff's Direct Employer**

Zhang first argues that Jenzabar can be held liable in this action because it was her "direct employer."   See Plaintiff's MOL at 13-17.   In particular, Zhang argues that she and Jenzabar entered into a contractual employment relationship, and claims that this "fact" alone is sufficient to establish that Jenzabar was her "employer" within the meaning of the NYCHRL.   See id. at 13-15.   Notably, however, Zhang readily admits that she never performed any duties for Jenzabar, but rather, worked solely for AGA, performing duties in furtherance of AGA's core objectives of exposing the injustice of China's One-Child Policy and seeking an end to gendercide.   See Plaintiff's MOL at 16-17; see also Zhang Deposition, Exhibit C, at 192-93; Chai Deposition, Exhibit E, at 81-82, 149; Lee Deposition, Exhibit F, at 80-82.   Nonetheless, she asks this Court to ignore the realities of her position and focus solely on a handful of documents that were provided to her at the commencement of her employment with AGA, when the organization was still in its infancy and relied on personnel services donated to AGA by Jenzabar, a wholly separate and distinct legal entity.   See Plaintiff's MOL at 13-17.   Zhang's argument is specious.

While an examination of the alleged employment agreements cited by Zhang may be relevant to a breach of contract claim, they are irrelevant to claims of discrimination and retaliation under the NYCHRL.  As discussed at length in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment (hereinafter "Defendants' SJ MOL"), dated June 27, 2014, courts examine four factors when determining whether an entity is an "employer" within the meaning of the NYCHRL:  "(1) whether the proposed employer had the power of the selection and engagement of the employee; (2) whether the proposed employer made the payment of salary or wages to the employee; (3) whether the proposed employer had the power of dismissal over the employee; and (4) whether the proposed employer had the power to control the employee's conduct."  See Goyette v. DCA Advertising, 830 F. Supp. 737, 746 (S.D.N.Y. 1993); see also Lihuan Wang v. Phoenix Satellite TV US, Inc., 976 F. Supp. 2d 527, 534 (S.D.N.Y. 2013) ("Numerous courts have . . . used this four-factor balancing test in analyzing claims brought pursuant to the NYSHRL and the NYCHRL.").  Additionally, courts consistently have held that the most important factor in this analysis is the fourth one—namely, whether the proposed employer had the power to control the employee's conduct.  See Goyette, 830 F. Supp. at 746; see also Robins v. Max Mara, U.S.A., Inc., 923 F. Supp. 460, 470 (S.D.N.Y. 1996).  When this four-factor test is applied to the facts of this case, it becomes patently clear that, for purposes of her claims under the NYCHRL, Zhang was employed by AGA, not Jenzabar.

With regard to the first factor, Zhang cannot demonstrate that Jenzabar had the power to hire AGA employees, including Zhang.  See Declaration of Ling Chai, executed on June 27, 2014 (hereinafter "Chai Declaration"), ¶ 18.  Notably, the decision to hire Zhang was made solely by Chai in her capacity as Founder of AGA.  See Chai Deposition, Exhibit E, at 158-61. While Chai emailed two members of Jenzabar's Human Resources ("HR") Department so that

they might extend the offer to Zhang and process the necessary paperwork, she did not seek their approval or the approval of any other Jenzabar employee or officer, she merely instructed them to extend Zhang an offer on behalf of AGA.  See id.; see also Exhibit H.  As an organization in its infancy, AGA initially relied on in-kind donations from Jenzabar in the form of payroll services and employee benefits, and Chai communicated her decision to Jenzabar's HR Department so that they could begin the process of placing Zhang on the payroll.  See Chai Deposition, Exhibit E, at 163, 174-75, 197-98.

As to the second factor, while Jenzabar was responsible for paying Zhang's salary, this fact alone is not dispositive.  As previously stated, while Jenzabar donated payroll and employee benefits services to AGA employees, it exerted no influence over the hiring process with regard to those employees.  See Chai Declaration ¶ 17.  Again, the salaries provided by Jenzabar were an in-kind donation to AGA, and Jenzabar derived no benefit from the employees whose salaries it provided.  See Chai Deposition, Exhibit E, at 174-75, 197-98; Lee Deposition, Exhibit F, at 186.  Moreover, even if this Court were to view these salaries as something other than an in-kind donation, the fact that Jenzabar paid Zhang's salary would not render Jenzabar AGA's employer under the NYCHRL.  Where, as here, AGA was solely responsible for hiring Zhang, setting her salary, and determining the conditions of her employment, the fact that another entity was responsible for tendering payment of her salary is immaterial.  See Chai Declaration ¶¶ 17-21.  See State Div. of Human Rights ex rel. Emrich v. GTE Corp., 109 A.D.2d 1082, 1083 (4th Dep't 1985) (finding that GTE, and not the temp agency that paid her salary, was plaintiff's employer where "GTE not only selected and hired the petitioner, but possessed and exercised the power of control, reserved the power of dismissal, and, indirectly, through the agency, paid her wages").  As in GTE Corp., Jenzabar merely paid Zhang's  salary and offered her the opportunity to

participate in Jenzabar's employee benefits program, but all decisions regarding Zhang's employment were solely within the power and control of AGA. See Chai Declaration ¶¶ 17-21.

As with the first factor, the third factor also weighs heavily in favor of finding that Zhang was employed by AGA, not Jenzabar. Here, the decision to terminate Zhang's employment with AGA was made by Chai, AGA's Founder, and Brian Lee ("Lee"), AGA's Executive Director. See Chai Deposition, Exhibit E, at 251-52; Exhibit EE. Notably, when making this decision, Lee and Chai consulted not with any officer or director of Jenzabar, but rather, with the Board of Advisors of AGA. See Chai Deposition, Exhibit E, at 251-52; Exhibit EE. Again, as with Zhang's hiring, Jenzabar played no role in the decision to terminate Zhang's employment with AGA, and Zhang can offer no evidence to support a contrary conclusion. Indeed, it has been held that the ability to exercise "veto" power over another entity's termination decision is insufficient to render said entity an "employer" under the statute. See Houston v. Fidelity, No. 95 Civ. 7764 (RWS), 1997 U.S. Dist. LEXIS 2366, at *37-38 (S.D.N.Y. Mar. 4, 1997); Goyette, supra, 830 F. Supp. at 746. Here, Jenzabar did not even possess this limited "veto" power with respect to Zhang or any other AGA employee, much less the ultimate "power of dismissal." See Chai Declaration ¶ 18.

Finally, with regard to the fourth and most important factor in the analysis, it simply cannot be disputed that Jenzabar exercised absolutely no control over Zhang's conduct as an employee for AGA. Tellingly, Jenzabar and AGA were engaged in completely separate enterprises—Jenzabar is a for-profit corporation that provides higher education software management solutions to universities, whereas AGA is a not-for-profit charitable Christian organization dedicated to exposing the injustice of China's One-Child Policy and ending gendercide. See Chai Declaration ¶¶ 1-2. Zhang has admitted that she performed absolutely no

work for Jenzabar—she did not design software, she did not sell software, and she did not perform any tasks related to Jenzabar's mission of supporting education by enabling institutions of higher education to thrive, grow, and achieve student success.  See Chai Declaration ¶ 11; Zhang Deposition, Exhibit C, at 192-93.  As Director of Operations for AGA, Zhang was responsible for overseeing AGA's programs in China, all of which were directed at AGA's core objectives of exposing the injustice of China's One-Child Policy and seeking an end to gendercide.  See Chai Deposition, Exhibit E, at 81-82, 149; Lee Deposition, Exhibit F, at 80-82.  Moreover, Zhang did not report to any Jenzabar employee, but rather, to Lee, AGA's Executive Director.  See Lee Deposition, Exhibit F, at 152.  There is simply no evidence to suggest that any Jenzabar employee exercised any influence over Zhang's daily activities, or that, as an educational software company engaged in an entirely separate enterprise, Jenzabar had any reason or desire to exert such control over Zhang's employment.  Stated differently, there is simply no logical reason to conclude that a software company had any interest in seeking to control the actions of employees of a non-profit Christian organization whose mission was to oppose China's One-Child Policy and end gendercide.

The cases relied upon by Zhang are inapposite.  First, Zhang cites Kausal v Educational Prods. Info. Exch. Inst., 105 A.D.3d 909 (2d Dep't 2013), stating that, in that case, the court held that the plaintiff had proven the existence of an employment relationship as a matter of law based on a writing signed by a representative of the employer.  See Plaintiff's MOL at 14-15.  However, in Kausal, the question was not whether plaintiff was employed by one entity or another, but rather, whether plaintiff was an employee or an independent contractor.  See Kausal, 105 A.D.3d at 911-12.  In that case, there was no question that the plaintiff performed services for the defendant, was paid a salary by the defendant, and was supervised by the defendant's

employee.  See id. at 912.  Indeed, the defendant's own witnesses testified that plaintiff was employed by the defendant.  See id.  Conversely, in the instant case, the identity of the employer is in dispute, not merely the nature of the employment relationship.  Accordingly, Kausal is clearly distinguishable and completely inapposite.

Second, Zhang relies on Brady v. Helmsley, 668 N.Y.S.2d 198 (1st Dep't 1998), claiming that the court therein held that an age discrimination claim "was properly brought against one of two corporate defendants 'in view of the unrefuted documentary evidence, including W-2 forms, demonstrating that plaintiff was employed by, and received his salary only from' one of the corporations."  See Plaintiff's MOL at 15.  Once again, Plaintiff is mistaken.  In Brady, the court did not conclude that plaintiff's age discrimination claim was properly brought against one corporate defendant, but instead, concluded that it was improperly brought against a second.  See Brady, 668 N.Y.S.2d at 487.  That is, because there was no evidence that plaintiff was employed by the second corporate defendant, the court concluded that the claims against that defendant properly were dismissed.  See id.  In the instant case, however, as discussed above and in Defendants' memorandum of law in support of their own motion for summary judgment, the undisputed evidence clearly demonstrates that Zhang was employed by AGA, not Jenzabar.

Third and finally, Zhang cites Gryga v. Guzman, 991 F. Supp. 105 (S.D.N.Y. 1998), claiming that the court found the existence of an employer-employee relationship between plaintiff and the City "based on documentary evidence that City paid plaintiff's salary, was listed as plaintiff's employer on his W-2 form, and required plaintiff to comply with certain City personnel policies." See Plaintiff's MOL at 15.  Once again, Zhang omits key details of the court's decision in an effort to bolster her tenuous position in this matter.  Notably, the court's decision in Gryga illustrates that courts apply different tests when defining the term "employer" under Title VII and the NYCHRL. See Gryga, 991 F. Supp. at 109-11.  As a result, while the fact that the City was listed as plaintiff's

employer on his W-2 was relevant to the analysis of his claims under Title VII, this fact was not addressed when examining plaintiff's claims under the NYCHRL.  See id.  Instead, the court applied the familiar four-factor test outlined above, and concluded that the City was plaintiff's employer because the City paid her wages and benefits, controlled her conduct by docking her pay when she was late, and retained the authority to fire plaintiff.  See id. at 111.  Here, in contrast, while Jenzabar paid Zhang's salary and benefits, Jenzabar neither exercised any control over her employment, nor had any authority with regard to the decisions to hire and terminate Plaintiff.  See Chai Declaration ¶¶ 17-19.  Thus, AGA, and not Jenzabar, was Plaintiff's direct and sole employer.

**B.      The Single Employer Doctrine is Inapplicable**

Zhang next argues that, even if Jenzabar is not held to be her direct employer, it can nonetheless be held liable under the single employer doctrine.  See Plaintiff's MOL at 17-19.  Once again, Plaintiff's argument is unavailing.

Under the single employer doctrine, separate companies may be deemed a "single employer" if they are "part of a single integrated enterprise."  Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996) (citation and internal quotations omitted).  "The single employer doctrine is an exception to the doctrine of limited liability, which allows corporations to organize so as to isolate liabilities among separate entities."  Murray v. Miner, 74 F.3d 402, 405 (2d Cir. 1996).  "The rationale for the exception is the fairness of imposing responsibility on an entity that shares decisionmaking authority with the employing entity."  Id.  In other words, the doctrine exists due to the recognition that it is inherently fair to hold one entity liable for decisions over which they enjoyed shared responsibility and authority.  See id.  When assessing the applicability of the single employer doctrine, courts examine the following four factors:  (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership.  Lihli, 80 F.3d at 747.  "Although no one factor is determinative,

and, indeed, all four factors are not required, control of labor relations is the central concern."

Murray, 74 F.3d at 404 (citations omitted).

Applying the four-factor test to the instant case conclusively demonstrates that the single employer doctrine is inapplicable.  With regard to the first factor, interrelation of operations, courts consider the following factors:

> (1) whether the parent was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records, and equipment; (3) whether the entities commingled bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns.

Velez v. Novartis Pharms. Corp., 244 F.R.D. 243, 252 (S.D.N.Y. 2007) (quoting Herman v. Blockbuster Entm't Group, 18 F. Supp. 2d 304, 309 (S.D.N.Y. 1998)).  Here, while Jenzabar issued AGA's paychecks, the other applicable factors preclude a finding that the operations of Jenzabar and AGA were in any way interrelated.  First, Jenzabar was in no way involved in AGA's daily activities relating to production, distribution, marketing and advertising.  Indeed, the two entities operate in wholly separate industries and pursue completely different objectives-- Jenzabar is a for-profit corporation that provides higher education software management solutions to universities, whereas AGA is a not-for-profit charitable Christian organization dedicated to exposing the injustice of China's One-Child Policy and ending gendercide.  See Chai Declaration ¶¶ 1-2.  Second, Jenzabar and AGA did not share employees, services, records, and equipment.  While Jenzabar donated some equipment to AGA, that equipment was not shared between the entities, as AGA its own computers, telephones and email system.  See  Chai Deposition, Exhibit MM, at 173-75.  Third, Jenzabar and AGA maintained separate bank

accounts and did not co-mingle funds.  See Lee Deposition, Exhibit NN, at 131, 258-59.  Fourth, there is no evidence that Jenzabar maintained AGA's books.  Indeed, with respect to AGA's operations in China, Zhang was the individual responsible for maintaining AGA's financial records.  See Zhang Deposition, Exhibit C, at 355-59; Chai Deposition, Exhibit E, at 211-12; Exhibit Q.  Thus, there is simply no evidence to suggest that Jenzabar maintained any control over AGA's daily operations, nor is there any reason to conclude that Jenzabar had any reason to exercise such control.  See id. ¶ 17.

The second factor, centralized control of labor relations, which some courts have found to be the most important factor, also weighs heavily against application of the single employer doctrine here.  When examining this factor, the question is which entity was responsible for the hiring, firing, supervision and/or evaluation of the employee in question.  See Guzman, 2013 U.S. Dist. LEXIS 155026, at *27.  Here, Zhang simply cannot demonstrate that Jenzabar played any role in the decision to hire her or terminate her employment, or that any Jenzabar employee exercised any control over her daily activities.  First, the decision to hire Zhang was made solely by Chai in her capacity as founder of AGA.  See Chai Deposition, Exhibit E, at 158-61.  Second, the decision to terminate Zhang was made by Chai and Lee, who consulted only with AGA's Board of Advisors, and not any director, officer or employee of Jenzabar,.  See Chai Deposition, Exhibit E, at 251-52; Exhibit EE.  Finally, throughout the course of her employment with AGA, Zhang did not report to any Jenzabar employee, but rather to Brian Lee, AGA's Executive Director.  See Lee Deposition, Exhibit F, at 152.  In short, there is zero evidence to suggest that Jenzabar at all involved itself in personnel decisions regarding AGA employees, other than to process the necessary paperwork once those employment decisions had been made by AGA.

As to the third factor regarding common management, Zhang's only argument is that Chai was an officer of both AGA and Jenzabar.  See Plaintiff's MOL at 18.  The fact that AGA and Jenzabar had one common officer is unremarkable, particularly because Chai was the founder of both organizations.  See Chai Declaration ¶¶ 1-2.  Indeed, the fact that Chai was the only common officer of Jenzabar and AGA is evidence of the two entities' independence, not their interrelatedness.  As for Chai, "[t]he presumption is that corporate personalities remain distinct and that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." See Guzman v. News Corp., No. 09 Civ. 09323 (LGS), 2013 U.S. Dist. LEXIS 155026, at *31 (S.D.N.Y. Oct. 28, 2013).  In Guzman, there was evidence that multiple executives held positions with both companies, and that two of the subsidiaries' Directors held Director positions with the parent.  See id. at *30-31.  Nonetheless, the court concluded that plaintiff's evidence of common management was insufficient to demonstrate centralized control of employee relations for purposes of the single employer doctrine.  See id. at *32-33.

 With regard to the fourth factor, while Jenzabar managed AGA's payroll, there is no other evidence of common ownership or financial control.  The two organizations maintain separate finances and file separate tax returns.  Indeed, as a recognized 501(c)(3) charitable organization, see Chai Deposition, Exhibit MM, at 119, AGA is obligated to maintain separate financial records, and it complies with that obligation.

Although examination of the aforementioned factors precludes application of the single-employer doctrine, the doctrine is inapplicable for a far more basic reason.  The tests applying the doctrine generally have examined the relationship between a parent and subsidiary.  Here, however, the two organizations at issue are not a parent and subsidiary.  Jenzabar is a for-profit

corporation with multiple shareholders, while AGA is a non-profit charitable organization with no shareholders. It simply defies logic to conclude that these two entities were part of a single corporate enterprise. Therefore, the single-employer doctrine is inapplicable.

## C.     Jenzabar Is Not Liable as a Joint Employer

Finally, Zhang argues that Jenzabar should be held liable under the joint employer doctrine. See Plaintiff's MOL at 19-20. "The joint employer doctrine applies when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." Fried v. LVI Servs., No. 10 Civ. 9308 (JSR), 2011 U.S. Dist. LEXIS 57639, at *19 (S.D.N.Y. May 23, 2011) (citation and internal quotations omitted). "In determining whether employers have 'joint' status, the courts consider 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" Gore v. RBA Group, Inc., No. 03 Civ. 9442 (KMK)(JCF), 2008 U.S. Dist. LEXIS 25912, at *10-11 (S.D.N.Y. March 31, 2008) (quoting N.L.R.B. v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994)).

To repeat the flaws in Zhang's argument at this juncture would be unnecessarily redundant. Suffice it to say that, with the exception of a few documents clearly directed at the formalities surrounding Zhang's pay and benefits, there is absolutely no reason to conclude that Jenzabar was at all involved in the personnel practices of Jenzabar. Again, when Zhang commenced her employment, AGA was an organization in its infancy, and it relied on financial support from Jenzabar in order to pursue its objectives of ending gendercide and opposing China's One-Child Policy. See Chai Declaration ¶ 17; Chai Deposition, Exhibit E, at 174-75, 197-98, 220; Lee Deposition, Exhibit F, at 186. However, Jenzabar played no role in the decision to hire Zhang, it played no role in supervising her daily activities, it played no role in evaluating her work, and it played no role in the decision to end her employment. See Chai Declaration ¶¶ 17-21.

While the above multi-factor tests are useful tools in determining the precise nature of the alleged employment relationships in this case, they are no substitute for simple common sense. Here, Zhang's own testimony demonstrates that she was well aware that AGA was an organization separate and distinct from Jenzabar, and that she was offered employment with AGA, not Jenzabar.  Specifically, Zhang testified that Chai informed her that she was forming a new organization called All Girls Allowed, and that Chai asked Zhang to help her start this organization.  See Zhang Deposition, Exhibit C, at 119.  At no point did the two discuss the work of Jenzabar or educational software solutions; rather, their discussions related solely to AGA's work of ending gendercide and opposing China's One-Child Policy.  See Zhang Deposition, Exhibit C, at 119; Chai Deposition, Exhibit E, at 142-45.  Additionally, throughout her employment, Zhang identified herself as an employee of AGA, not Jenzabar.  In particular, while testifying before Congress in May 2011, Zhang was identified as the Director of Operations for AGA, not as an employee of Jenzabar.  See Exhibit CC at 18.  It is simply disingenuous of Zhang now to assert that she was employed by Jenzabar, when she admittedly performed no work on behalf of Jenzabar, never held herself out as a Jenzabar employee, and never understood herself to be an employee of Jenzabar.  Accordingly, Zhang's partial motion for summary judgment against Jenzabar must be denied.

## POINT II

### ZHANG IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO HER CLAIMS AGAINST CHAI IN HER INDIVIDUAL CAPACITY.

Zhang next argues that she is entitled to summary judgment with respect to her claims against Chai in her individual capacity because Chai was her "employer" within the meaning of the NYCHRL and otherwise participated in the discriminatory acts giving rise to her claims in

this matter.  <u>See</u> Plaintiff's MOL at 20-21.  However, it is well settled that individual liability under the NYCHRL is dependent upon the liability of the corporate employer.  <u>See</u>, <u>e.g.</u>, <u>Turowski v. Triarc Cos., Inc.</u>, 761 F. Supp. 2d 107, 113-14 (S.D.N.Y. 2011).  As discussed herein and in Defendants' SJ MOL, because Zhang cannot maintain a claim against any of the institutional defendants, her claims against Chai must also be dismissed.  <u>See</u> <u>id.</u>

### POINT III

**ZHANG'S CLAIMS OF RELIGIOUS DISCRIMINATION AND RETALIATION AGAINST AGA MUST BE DISMISSED BECAUSE AGA IS A RELIGIOUS ORGANIZATION EXEMPT FROM THE NYCHRL'S PROHIBITION AGAINST RELIGIOUS DISCRIMINATION.[1]**

Zhang next argues that AGA is not entitled to the religious exemption set forth in Section 8-107(12) of the New York City Administrative Code.  <u>See</u> Plaintiff's MOL at 21-32. Specifically, Zhang first argues that AGA has waived its right to assert this exemption by failing to plead it in its Amended Answer to the Amended Complaint.  <u>See</u> <u>id.</u> at 22-23. Next, Zhang argues that AGA is not entitled to the exemption because it does not qualify as a "religious organization" within the meaning of the NYCHRL, and because AGA's alleged actions do not fall within the scope of the exemption.  <u>See</u> <u>id.</u> at 24-30.  Once again, Plaintiff's argument falls flat.

### A.    AGA Has Not Waived its Right to Assert the Exemption Set Forth in Section 8-107(12)

With regard to the "religious organization" exemption, Zhang first argues that AGA has waived its right to assert this defense by failing to plead it in its Amended Answer.  <u>See</u>

---

[1]      In addition to her argument that this exemption is not applicable to AGA, Plaintiff also argues that the exemption is inapplicable to Jenzabar.  <u>See</u> Plaintiffs' MOL at 23-24.  However, Jenzabar does not assert that it is a religious organization entitled to the exemption set forth in Section 8-107(12).  Accordingly, Defendants will not address Plaintiffs' arguments with respect to Jenzabar.

Plaintiff's MOL at 22-23.   According to Zhang, she "would be unduly prejudiced if, post-discovery, defendants are permitted to change course and assert that they were statutorily permitted to" discriminate against Plaintiff because of her religion.  See id.  This argument is both disingenuous and wrong.

As an initial matter, Defendants are not aware of any court ever holding that the religious exemption set forth in Section 8-107(12) is an affirmative defense that is waived unless pled in a responsive pleading, and Zhang has cited to no such authority.  Indeed, a review of the text of Section 8-107 reveals that the legislature never intended for this exemption to be treated as an affirmative defense.  That is, in three distinct subsections of Section 8-107, the legislature expressly used the term "affirmative defense," setting forth specific elements that a defendant must prove in order to avoid liability.  See N.Y.C. Admin. Code §§ 8-107(15)-b, (21)-e, (22). Conversely, in Section 8-107(12), the legislature did not use the term "affirmative defense," and made no mention of an affirmative obligation on the part of the employer-defendant.  See N.Y.C. Admin. Code § 8-107(12).  The fact that the legislature used the term "affirmative defense" in several subsections of Section 8-107, but not the subsection at issue, is conclusive proof that it did not intend to create an affirmative defense with respect to this provision.  See People v. Rosano, 69 A.D.2d 643, 654-655 (2d Dep't 1979) (concluding that the use of the term "affirmative defense" in one section of a statute, but not the other, demonstrated that the legislature did not intend to define an affirmative defense with respect to the latter provision). Thus, to the extent that Zhang claims this defense has been waived, her argument must fail.

Nonetheless, this Court need not decide whether the legislature intended to treat the religious exemption set forth in Section 8-107(12) as an affirmative defense, as Zhang has failed to demonstrate why Defendants should not be permitted to rely on the exemption in this matter.

First, Defendants did not fail to assert the defense in their Amended Answer to the Amended Complaint.   As and for their sixteenth enumerated defense in their Amended Answer, Defendants stated as follows:   "The Complaint fails, in whole or in part, because Plaintiff's claims are barred pursuant to § 296(11) of the New York City Human Rights Law."   See Amended Answer, annexed to the Seacord Opp. Declaration as Exhibit PP, ¶ 122.   While this defense was intended to reference the NYCHRL's religious exemption contained in New York City Administrative Code § 8-107(12), counsel inadvertently cited to the corresponding exemption of the NYSHRL.   Compare N.Y.C. Admin. Code § 8-107(12) with N.Y. Exec. Law § 296(11).   The inclusion of this defense, coupled with the Amended Answer's multiple references to AGA's religious mission, provided Plaintiffs with ample notice of Defendants' intent to assert the religious exemption contained in Section 8-107(12).

Finally, to the extent that this Court deems it necessary for Defendants to assert the exemption as an affirmative defense, with reference to the applicable section of the Administrative Code, Defendants respectfully seek leave to file an Amended Answer with the corrected citation. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend a pleading] when justice so requires."   See Fed. R. Civ. P. 15(a)(2).   When evaluating a motion for leave to amend a pleading, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." See Monahan v. N.Y. City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) (citing Forman v. Davis, 317 U.S. 178,182 (1962)).  "Additionally, it is well-established that courts in this circuit may consider the merits of an affirmative defense raised for the first time in a summary-judgment motion 'so long as the plaintiff has had an opportunity to respond.'"   Kelly v. A1 Tech., No. 09 Civ. 962 (LAK)

(MHD), 2010 U.S. Dist. LEXIS 37807, at *57-58 (S.D.N.Y. April 8, 2010) (quoting <u>Astor Holdings, Inc. v. Roski</u>, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003)).  Applying these factors to the instant case, it is clear that Plaintiffs can offer not justification why Defendants' motion should not be granted.

As discussed above, from the outset, Defendants had every intention of asserting Section 8-107(12)'s religious exemption as a defense, and, until the filing of Plaintiff's summary judgment motion, believed they had done so.  Once they realized the typographical error, however, they immediately sought to correct it with the filing of the instant motion for leave to amend.  Under these circumstances, Plaintiffs cannot demonstrate any undue delay, bad faith or dilatory motive on the part of Defendants.  <u>See</u> <u>Local 802, Associated Musicians v. Parker Meridien Hotel</u>, 145 F.3d 85, 90 (2d Cir. 1998) ("Justice weighs heavily in favor of permitting [Defendant] to correct a typographical error in its answer . . . .").

Next, Plaintiffs cannot demonstrate that they would be prejudiced by allowing Defendants to amend their answer to correct the typographical error in question.  Throughout this litigation, Plaintiffs have been well aware of Defendants intent to assert the religious exemption, and discovery has been conducted with an eye toward exploring the applicability of that exemption.  For example, in Plaintiff's First Request for Production of Documents to Defendants, Plaintiffs included the following requests:

>    8.    Produce all documents concerning the formation, establishment or launch of AGA in or about June or July 2010, including but not limited to all documents concerning the formation of AGA filed with the Secretary of the Commonwealth of Massachusetts or any other governmental agency or entity.

>    9.    Produce all documents concerning any application by AGA to be recognized as a non-profit organization by any governmental entity.

>      10.    Produce all documents in which each of the
> defendants set forth any policy, guideline, or statement concerning
> discrimination in employment on the basis of religion or creed.
>
>      11.    Produce all documents reflecting any
> communication by AGA to its employees or employee applicant
> regarding a religious or creed requirement for employment.
>
>      12.    Produce all documents concerning any mission
> statement that AGA has printed, published or adopted at any point
> since its formation, including but not limited to all versions of the
> "mission" section of AGA's website.

See Exhibit OO, Seacord Opp. Declaration, at 5.  These requests all were directed at exploring

the religious nature of AGA's work and mission, and Defendants responded to these requests

with documents that Plaintiffs have relied upon in support of their summary judgment motion.

See Plaintiff's Exhibits 10, 12, 38.  Indeed, on October 11, 2013, prior to the filing of

Defendants' pre-motion conference letter, Plaintiffs filed a pre-motion conference letter seeking

leave to file a motion for partial summary judgment, in which they expressly addressed the

inapplicability of Section 8-107(12)'s religious exemption in this case.  See Docket Entry No.

45.  As this letter indicates, throughout this litigation, Plaintiffs have been aware of Defendants'

intent to rely on the religious exemption, and Plaintiff's sudden assertion that this is somehow a

"change [of] course" or that they are in any way prejudiced by Defendants' reliance on this

exemption is completely disingenuous.

    Finally, for the reasons set forth in the next section and in Defendants' SJ MOL, AGA is

a religious organization falling within the scope of Section 8-107(12)'s exemption.  See

Defendants' SJ MOL at 19-28.  Accordingly, the proposed amendment is not futile.

**B.    AGA is a Religious Organization Entitled to Application of the Exemption Set Forth in Section 8-107(12)**

    In their memorandum of law in support of their own motion for summary judgment,

Defendants thoroughly addressed the question of whether AGA qualifies as a religious

organization within the meaning Section 8-107(12).  <u>See</u> Defendants' SJ MOL at 19-28.  Having

not had the benefit of that analysis, Plaintiffs have set forth their own position with respect to the

applicability of the exemption in which they misinterpret the applicable case law and misstate or

omit crucial facts in this case.  <u>See</u> Plaintiff's MOL at 24-29.

       Initially, Plaintiffs correctly identify the paucity of case law directly addressing the scope

of Section 8-107(12)'s exemption.  <u>See</u> Plaintiff's MOL at 24-25.  However, as Plaintiffs note in

their memorandum of law, there are a number of cases that analyze and define the scope of

similar exemptions contained in Title VII and the NYSHRL.  The first such case identified by

Plaintiffs is <u>Scheiber v. St John's Univ.</u>, 84 N.Y.2d 120 (1994), although their discussion of that

case is painfully misguided.

       In <u>Scheiber</u>, which addressed the analogous religious exemption set forth in the

NYSHRL,[2] the New York Court of Appeals addressed the question of whether St. John's

University ("SJU"), an institution that admittedly was "conceived with the intent of fulfilling a

secular educational role," qualified for the religious exemption contained in New York Executive

Law § 296(11).  <u>See</u> <u>Scheiber</u>, 84 N.Y.2d at 125-26.  However, as the court noted, Section

296(11)'s religious exemption defines two types of religious institutions or organizations:   (1)

those that are themselves religious institutions or organizations; and (2) those that are "operated,

supervised or controlled by or in connection with a religious organization."   <u>See id.</u> at 126

(quoting N.Y. Exec. Law § 296(11)) (internal quotations omitted).  In <u>Scheiber</u>, the court noted

that because SJU was operated in connection with the Vincentian order, an undeniably religious

institution or organization, then SJU, itself, qualified for the exemption.  <u>See</u> <u>Scheiber</u>, 84

---

[2]     As Defendants noted in their memorandum of law in support of their summary judgment motion, defined term the language used in the exemptions contained in the NYSHRL and the NYCHRL are nearly identical. <u>Compare</u> N.Y.C. Admin. Code § 8-107(12), <u>with</u> N.Y. Exec. Law § 296(11).  Thus, cases analyzing the religious exemption provisions of Title VII and the NYSHRL are instructive when making a determination as to the scope of the exemption found in Section 8-107(12).

N.Y.2d at 125-26.  That is, because the court concluded that SJU was "operated, supervised or controlled by or in connection with a religious organization," there was no need to reach the question of whether SJU, itself, was a religious institution or organization.  See id.

In their memorandum of law, Plaintiffs unnecessarily complicate what was a rather simple holding in Scheiber.  Specifically, they identify three "facts" that allegedly motivated the court's finding that SJU qualified for the religious exemption:  "(1) St. John's was operated and supervised by the Vincentians, a Roman Catholic Order of priests; (2) St. John's founding documents described the institution as offering a 'Catholic atmosphere' and 'committed to a Christian version of reality;' and (3) the St. John's by-laws required that four of its most senior positions be filled by Vincentians."  See Plaintiff's MOL at 25.  Plaintiff's reading of the court's decision is misguided.  While the court did identify certain background facts related to SJU's history and religious affiliations, only one fact was controlling—SJU is operated in connection with the Vincentian order.  See Scheiber, 84 N.Y.2d at 125-26.  As a result, the court did not address the issue presented in this case—whether AGA is, itself, a religious organization or institution.[3]  See id.  Thus, Plaintiff's attempt to argue that Scheiber established a multi-factor test that should be applied in this case is misplaced.  For purposes of the instant matter, Scheiber is instructive solely because it rejected an attempt to do precisely what Plaintiffs are attempting to do here—restrict application of the religious exemption only to those institutions that traditionally have been viewed as unquestionably religious, such as churches, synagogues, and the like.  See id. at 126 ("Plaintiff contends that only an entity organized pursuant to the Religious Corporations Law can claim status as a religious organization under the Human Rights Law, but our statutory exemption, broadly drafted, contains no such limitation.").

---

[3]   Defendants do not allege that AGA is operated, supervised or controlled by another religious organization or institution.

Next, Plaintiffs cite two decisions from the Ninth Circuit Court of Appeals addressing the religious exemption of Title VII, both of which have been criticized and questioned by subsequent decisions of that court.   First, Plaintiffs cite <u>EEOC v. Kamehameha Sch./BishopEstate</u>, 990 F.2d 458 (9th Cir. 1993), arguing that the court's limited Title VII's religious exemption should be applied "only to those institutions with extremely close ties to organized religion. Churches, and entities similar to churches, were the paradigm."   <u>See</u> Plaintiff's MOL at 26-27 (quoting <u>Kamehameha</u>, 990 F.2d at 460).   However, an actual reading of <u>Kamehameha</u> reveals that the court's decision was not that restrictive.   Rather, the court stated that:

> '[E]ach case must turn on its own facts. All significant religious and secular characteristics must be weighed to determine whether the corporation's purpose and character are primarily religious. Only when this is the case will the corporation be able to avail itself of the exemption.' 'Our inquiry here, . . . is to determine whether the 'general picture' of the institution is primarily religious or secular.'

<u>Kamehameha</u>, 990 F.2d at 460 (quoting <u>EEOC v. Townley Engineering & Mfg. Co.</u>, 859 F.2d 610, 618-19 & n.14 (9th Cir. 1988)).   Moreover, to the extent that <u>Kamehameha</u> held that Title VII's religious exemption applied only to those organizations with "extremely close ties to organized religion," it is completely inapposite to the instant case.   As discussed above, the NYCHRL's religious exemption applies to two categories of organizations:   (1) those that are, themselves, religious organizations; and (2) those that are "operated, supervised or controlled by or in connection with a religious organization."   <u>See</u> N.Y.C. Admin. Code § 8-107(12).   If, to qualify for an exemption, an organization would have to be operated, supervised or controlled by a religious organization, there would be no need to define those two separate categories.   Thus, <u>Kamehameha</u> is not instructive in this matter.

23

Second, Plaintiffs cite EEOC v. Townley Engineering & Mfg. Co., 859 F.2d 610 (9th Cir. 1988), a case from the Ninth Circuit that preceded the decision in Kamehameha.  See Plaintiff's MOL at 27.   According to Plaintiffs, the court in Townley, "held that a for-profit mining company was not a religious organization, despite the fact that it had weekly prayer services for its employees, enclosed Gospel tracts on outgoing mail, and printed Bible verses on invoices and purchase orders."  See Plaintiff's MOL at 27 (quoting Townley, 859 F.2d at 619).   Plaintiffs further note that the court reached this conclusion because the company was unaffiliated with any church and its Articles of Incorporation cited no religious purpose.  See id.   However, it actually appears that the court's primary concern was the fact that the company produced a secular product—mining equipment, and the invocation of religious messages in certain communications by the company's owners were substantially unrelated to, and not a necessary aspect of, the company's business objective.  See Townley, 859 F.2d at 619-20 ("We merely hold that the beliefs of the owners and operators of a corporation are simply not enough in themselves to make the corporation 'religious' within the meaning of section 702.").

The facts of the instant case are clearly distinguishable from those present in Townley. AGA's invocation of religious teachings and principles was not unrelated to its human rights work, it was the motivation for, and an essential aspect of that work.  See Chai Deposition, Exhibit E, at 139-40, Exhibit J at 2; Exhibit X at 2.  AGA's religious mission is clearly set forth in multiple documents and public records, including the packet of materials distributed at its launch in June 2010, its Vision Framework, its application to the IRS for 501(c)(3) status, testimony its employees have provided to Congress, and its website.  See Exhibits J at 2; Exhibit X at 2; Exhibit Z; Exhibit CC at 18-22.  Additionally, as the Ninth Circuit later recognized in Spencer v. World Vision, Inc., 633 F.3d 723 (9th Cir. 2011), the company's for-profit status in

24

_Townley_ weighed strongly against a finding that it was a religious organization subject to Title VII's exemption.  _See_ _World Vision_, 633 F.3d at 735.  Here of course, it is undisputed that AGA is a not-for-profit organization.  _See_ Chai Declaration ¶ 1.

While _Kamehameha_ and _Townley_ provide little in the way of guidance with regard to the issue of whether AGA qualifies as a religious organization entitled to the benefit of Section 8-107(12)'s exemption, two other cases cited by Plaintiff are more instructive.  First, in _LeBoon v. Lancaster Jewish Community Center Ass'n_, 503 F.3d 217 (3d Cir. 2007), the Third Circuit developed a nine-factor test for determining whether an organization qualifies for Title VII's religious exemption. Those nine factors are: (1) whether the entity operates for a profit; (2) whether it produces a secular product; (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose; (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue; (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees; (6) whether the entity holds itself out to the public as secular or sectarian; (7) whether the entity regularly includes prayer or other forms of worship in its activities; (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution; and (9) whether its membership is made up by coreligionists.  _See_ _LeBoon_, 503 F.3d at 226.  While Plaintiffs claim that application of these factors to the instant case does not benefit AGA, they are mistaken.  Indeed, Plaintiff's analysis is cursory at best, addressing only some of the factors and omitting key facts that undermine their position.  _See_ Plaintiff's MOL at 28-29.  However, a proper application of the _LeBoon_ test leads to the ineluctable conclusion that AGA is a religious organization.

First, AGA does not operate for a profit, but rather, is a not-for-profit charitable

organization.  See Chai Declaration ¶ 1; Chai Deposition, Exhibit E, at 66.  Second, AGA does

not produce a purely secular product; it advocates against China's One-Child Policy and invokes

Christianity as a spiritual basis for such advocacy.  See Chai Declaration ¶ 1. Third, while

AGA's Articles of Organization do not identify a religious purpose, its Vision Framework,

drafted in November 2010, only a few months after AGA's launch and the filing of its Articles of

Organization, certainly does, as do the materials distributed at its launch in June 2010 and those

submitted by AGA in support of its application for 501(c)(3) status.  In particular, AGA's Vision

Framework contains an introduction from Chai, which states in pertinent part:

> The following proposal is a detailed framework that reveals a
> glimpse of God's redemptive plan for China through the work of
> All Girls Allowed.  In the short few months since our inception, as
> both new and experienced Christians in a new ministry, we have
> spent more time in prayer and scripture study than anything else.
> As a result, we have been blessed with miracle after miracle, one
> amazing encounter after another. God is faithful and his words are
> true. There is no doubt that this is a ministry that is after God's
> own heart, and God's heart and might is in this movement.

Exhibit X at 2.

As to the fourth LeBoon factor, while AGA is not owned or formally affiliated with a

church or synagogue, it does solicit and has received contributions from churches and other

religious organizations.  As to the fifth factor, Wilfred Job, a Methodist minister, serves both on

AGA's Board of Advisors and its Board of Directors.  See Chai Declaration ¶¶ 22-24.  With

regard to the sixth factor, AGA unabashedly holds itself out to the public as a religious

organization.  Among other occasions, during a hearing before Congress in May 2011, AGA was

introduced as a "non-profit Christian organization."  See Exhibit CC.  AGA's Christian beliefs

also are set forth on its website.[4]  Plaintiffs seem to take fault with the lack of any reference to

---

[4]    See http://www.allgirlsallowed.org

religion on the website in October 2010, however, Plaintiff's own exhibit identifies AGA's religious beliefs with its reference to "Christian Baby Shower Gifts."  See Plaintiff's Exhibit 16 at 2.  Moreover, AGA's website evolved over time, and, as early as April 2011, AGA's religious mission and motivation were set forth in detail on the AGA website.  See Exhibit KK.

Regarding the seventh factor, AGA regularly includes prayer, Bible study, and other forms of worship in its daily activities, including daily prayer meetings and periodic team retreats, during which the majority of time was spent in prayer or other forms of worship.  See Lee Deposition, Exhibit F, at 141, 163-64, 241-42.  Indeed, it is Zhang's objection to having to participate in these religious activities that forms the basis of her claims in this action.  See Amended Complaint ¶¶ 48-51, 61-68.  The eighth factor is inapplicable to the instant analysis, as AGA is not an educational institution.  However, the ninth factor also argues in favor of a finding that AGA is a religious organization, as every AGA employee, with the possible exception of Zhang, shared AGA's Christian beliefs and its dedication to AGA's faith-based mission.

The second case cited by Plaintiffs, which also was discussed in Defendants' memorandum of law in support of their summary judgment motion, is Spencer v. World Vision, Inc., 633 F.3d 723 (9th Cir. 2011).  In World Vision, the Ninth Circuit expressed concern that the test developed in LeBoon, might lead to an improper entanglement of the government and religion.  See World Vision, 633 F.3d at 731.  Accordingly, the Ninth Circuit developed its own stream-lined test, stating "a nonprofit entity qualifies for the [Title VII religious organization exemption] if it establishes that it 1) is organized for a self-identified religious purpose (as evidenced by Articles of Incorporation or similar foundational documents), 2) is engaged in

activity consistent with, and in furtherance of, those religious purposes, and 3) holds itself out to the public as religious." Id. at 734.

Again, applying the World Vision test to AGA also leads to the conclusion that AGA is a religious organization entitled to the exemption.  First, it is undisputed that AGA is a nonprofit entity, and that AGA's foundational documents clearly evidence that it was established for a self-identified religious purpose.  While the Articles of Organization do not expressly reference AGA's religious mission, there exist a host of other documents clearly demonstrating the religious foundation for AGA's work.  For example, the mission statement included in the packet of information distributed at AGA's launch in June 2010, which was the first document setting forth AGA's purpose and mission, clearly states, among other things, that:  "AGA is motivated by a desire to restore equality between men and women, to bring back joy, peace and dignity to motherhood and to transform lives through God's love and amazing grace."  See Exhibit J at 2. Additionally, the Vision Framework published by AGA on or about November 19, 2010, only a few months after AGA's launch, is riddled with references to AGA's religious mission, including the previously quoted introductory section from Chai, AGA's Founder.  See Exhibit X at 2.  Moreover, in its application to the IRS for 501(c)(3) status, AGA further emphasized its religious mission, stating, among other things, that:

> All Girls Allowed was founded with the mission of following Jesus' teachings about restoring life, value and dignity to girls and mothers, particularly in the developing countries of the world in which the culture promotes or tolerates discrimination against females.  All Girls Allowed is motivated by the love of Jesus Christ, who—by serving the least of us—set the example that All Girls Allowed should do as He has done for humanity…

See Exhibit Z at 2.  While the precise wording of the mission statement has undergone some changes since AGA's inception, AGA has not wavered from its core objective of "seek[ing] to

restore the God-given life, value and dignity to women."[5]   Accordingly, the first factor of the World Vision test clearly has been met.

As to the second factor of the World Vision test, it cannot reasonably be disputed that AGA is engaged in activities in furtherance of its religious purpose.  Once again, Zhang not only admitted that AGA was engaged in activities in furtherance of its religious purpose, but it is these religious activities, and Zhang's alleged opposition to those activities, that form the very heart of her claims in this matter.  See Amended Complaint, Exhibit B, ¶¶ 46-69.  Accordingly, the second World Vision factor has been met.  Finally, as discussed above with respect to the LeBoon test, AGA repeatedly held and holds itself out to the public as religious.  Accordingly, AGA also qualifies as a religious organization under the test set forth in World Vision.

Regardless of which test this Court chooses to apply, the result inevitably inevitably is the same—AGA is a religious organization entitled to the benefit of the NYCHRL's religious exemption.  Here, Plaintiff's chief concern seems to be that AGA's Articles of Incorporation and bylaws do not expressly reference a religious purpose.  However, this is but one factor that courts should consider when performing the relevant analysis.  Indeed, it is an improper simplification of that factor.  In World Vision, when determining whether the organization at issue was organized for a self-identified religious purpose, the court not only examined the Articles of Incorporation and bylaws, but also its core values and mission statement.  See World Vision, 633 F.3d at 735-36.  As discussed above and in Defendants' SJ MOL, AGA has stated its religious mission in countless documents and the religious foundations for its work.  Accordingly, Plaintiff's continued reliance on this one aspect of one factor of the inquiry is unavailing.

Ultimately, the question for this Court is, upon examination of all the relevant

---

[5]   See http://www.allgirlsallowed.com/about/who-we-are.

characteristics of an organization, whether the organization is primarily religious.  See World Vision, 633 F.3d at 726-27.  In this case, the answer to that question is a resounding and unequivocal "yes."

**C.    AGA's Actions in this Case Fall Within the Scope of the Exemption**

Plaintiff next argues that, even if the exemption applies to AGA, AGA's actions nonetheless do not fall within the scope of the exemption.  By its plain language, the NYCHRL's exemption applies only to actions "taken by a religious organization 'to promote the religious principles for which it is established or maintained.'"  Lown v. Salvation Army, Inc., 393 F. Supp. 2d 223, 254 (S.D.N.Y. 2005) (quoting N.Y.C. Admin. Code § 8-107(12).  Here, Zhang argues that the exemption did not permit AGA "to continually harass an employee about her religious practices, to make derogatory comments about an employee's beliefs, or to try to force an employee to change her beliefs and practices during a period of employment."  See Plaintiff's MOL at 30.  First, Zhang's allegations that she was "harassed" and subjected to "derogatory comments" are wholly conclusory and must be disregarded.  See Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) ("Reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion.").  Plaintiff has provided no specific incidents of harassment or derogatory comments, other than to say, again in conclusory fashion, that she was subjected to anti-Catholic comments.  See Plaintiff's MOL at 33.  As to the allegation that Defendants tried to force her to change her beliefs, that is precisely the type of conduct that the exemption is intended to cover.  Where, as here, a religious organization is alleged to have conditioned a plaintiff's employment on her adherence to the organization's religious beliefs and principles, such actions fall directly within the scope of the exemption's protections.  See Lown, 393 F. Supp. 2d at 253 ("Section 8-107(12)'s language is sufficiently expansive to shield personnel policies of religious organizations beyond those relating to hiring and firing.").

Accordingly, because AGA is a religious organization, and the actions at issue fall within the scope of the applicable exemption, Zhang's claims against AGA fail as a matter of law and must be dismissed.

## POINT IV

## ZHANG IS NOT ENTITLED TO SUMMARY JUIDGMENT WITH RESPECT TO HER CLAIMS OF DISCRIMINATION.

In the final pages of her memorandum of law, Plaintiff finally turns to the question of why they should be granted partial summary judgment with respect to her claims of religious discrimination.  See Plaintiff's MOL at 32-35.  Specifically, Zhang claims that the Defendants imposed religious requirements on her and treated her less well because of her religion, and that they terminated her employment because of her religion.  See id.  These claims must be rejected.

As discussed in the previous section, AGA is a religious organization within the meaning of Section 8-107(12).  Accordingly, Zhang's religious discrimination claims against AGA must be dismissed.  As to Jenzabar, because it was not her employer, it cannot be held liable for any violation of the NYCHRL's anti-discrimination provisions.  Moreover, even if this Court were to conclude that Jenzabar jointly employed Zhang, her claims still must fail because she cannot demonstrate that Jenzabar took any discriminatory actions against her.   "[J]oint-employer liability does not by itself implicate vicarious liability and a finding that two companies are an employee's joint employers only affects each employer's liability to the employee for their own actions."  Al-Kaysey v. L-3 Servs., No. 09 Civ. 09323 (LGS), 2013 U.S. Dist. LEXIS 141037, at *9 (E.D.N.Y. Sept. 27, 2013) (citation and internal quotations omitted).  Here, however, the only alleged actor with any connection to Jenzabar is Chai, and it simply cannot be said that Chai was acting in her role as an officer of Jenzabar when she made any decision with respect to Plaintiff's employment.  Again, it is well settled that officers of separate corporations "can and do 'change

hats' to represent the two corporations separately." Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 779 (5th Cir. 1997). Thus, because there is no evidence that Jenzabar played any role in the employment decisions at issue, Zhang's claims against Jenzabar must be dismissed.

As for Chai, she cannot be held liable in her individual capacity absent a finding of liability on the part of Jenzabar or AGA. See Turowski, *supra*, 761 F. Supp. 2d at 113-14. Accordingly, because the claims against Jenzabar and AGA fail as a matter of law, the claims against Chai must also be dismissed.

Finally, Plaintiff's request for summary judgment must fail because she has failed to prove her claims of religious discrimination. First, Plaintiff appears to allege she was subjected to a hostile work environment because of her religion, although such claim was not pled in her Amended Complaint and must be denied for that reason alone. See Plaintiff's MOL at 32-34; see also Amended Complaint, Exhibit B. As Zhang correctly notes, in order to establish such a claim, Plaintiff must demonstrate she was treated "less well" because of her religious beliefs. See Williams v. New York City Hous. Auth., 61 A.D.3d 62, 78 (1st Dep't), lv. denied, 13 N.Y.3d 702 (N.Y. 2009). Zhang has made no such showing.

Here, Plaintiff alleges that she was treated "less well" in that she was required to attend prayer sessions against her will, subjected to anti-Catholic comments, and forced to choose between maintaining her employment and changing her religious practices. See Plaintiff's MOL at 33. These assertions are simply untrue. First, while AGA did have daily prayer meetings, the record clearly demonstrates that Zhang was not required to attend. That is, in or about March 2011, Zhang expressed concern that the daily prayer meetings were too time consuming, and Lee and Chai agreed that Zhang instead would meet with Lee separately twice per week. See Plaintiff's Exhibit 8 at 216; Plaintiff's Exhibit 30. Moreover, Plaintiff did not object to the

prayer sessions as against her religious beliefs, but rather, simply felt that they were too time consuming.  See Plaintiff's Exhibit 8 at 216.  Thus, there is simply no evidence to support the assertion that Zhang was required to attend prayer meetings against her will, or that attending those meetings would in any way conflict with her religious beliefs.

Second, Zhang alleges she was subjected to anti-Catholic comments, but fails to identify any such comments.  See Plaintiff's MOL at 33.  As previously stated, such vague and conclusory allegations are insufficient to defeat a summary judgment motion, let alone demonstrate entitlement to summary judgment in Plaintiff's favor.  See Davis, supra, 316 F.3d at 100.  Zhang has identified no such comments, the record does not contain any reference to such comments, and Chai adamantly denies ever making such "anti-Catholic" comments.  See Chai Deposition, Exhibit E, at 160.  Indeed, Zhang herself complained about Catholicism and the Catholic church, particularly in relation to the sex scandals within the church.  See Zhang Deposition, Exhibit LL, at 253-54; Chai Deposition, Exhibit MM, at 186.  Finally, Chai has testified that she was well aware of Zhang's Catholic beliefs at the time when she was hired to join AGA, and Chai had absolutely no concern with regard to those beliefs.  See Chai Deposition, Exhibit E, at 160.  Chai's only concern was that AGA employees be followers of Jesus Christ, which Zhang professed to be.  See id.

Finally, Zhang claims she was compelled to change her religious practices in order to continue her employment with AGA, and that she ultimately was terminated because she refused to do so.[6]  See Plaintiff's MOL at 33-34.  In order to establish a disparate treatment religious discrimination claim under the NYCHRL, a plaintiff must demonstrate the following:  (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed

---

[6]     Although Zhang identifies these as two separate claims, they essentially are one and the same and will be addressed together.

her employers of this belief; and, (3) she was disciplined for failing to comply with the conflicting employment requirement.  See Weber v. City of New York, 973 F. Supp. 2d 227, 263-264 (E.D.N.Y. 2013 Here, Plaintiff can make no such showing because she cannot demonstrate that she was ever asked to do anything inconsistent with her religious beliefs.

Here, Plaintiff cites the proposal presented to her on March 2, 2012, in which she was asked to choose between two different scenarios regarding her employment with AGA.  See Plaintiff's MOL at 34.  Under the first scenario, Plaintiff was asked to agree to certain conditions reaffirming her faith and committing herself to AGA's work and religious mission.  See Exhibit FF.  While Plaintiff claims these conditions were an attempt to have her change her religious beliefs, this assertion is simply untrue.  Specifically, Zhang has testified that the points set forth in the proposal were consistent with her Catholic beliefs, see Zhang Deposition, Exhibit LL, at 276-77.  Accordingly, she cannot establish a claim of religious discrimination because she cannot demonstrate that she held a *bona fide* religious belief that conflicted with an employment requirement.  See Weber, 973 F. Supp. 2d at 263-64.

Plaintiff's claim of religious discrimination is entirely specious.  In order to obtain her position with AGA, Zhang professed to be a follower of Jesus Christ and supported AGA's religious mission whenever it suited her to do so.  See Zhang Deposition, Exhibit C, at 252-53; Exhibit R, S.  Indeed, during her employment, Zhang expressed her agreement that AGA employees should be Christians and share AGA's religious beliefs.  See Exhibit T.  Zhang only took fault with AGA's religious mission when it became an inconvenience and hindered her ability to pursue her work on behalf of her own organization, WRIC.  Accordingly, because Zhang's religious discrimination claims are completely unfounded, her motion for summary judgment must be denied.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request that Plaintiff's motion for partial summary judgment be denied, that Defendants' motions for summary judgment and for leave to amend the answer be granted, that the Amended Complaint be dismissed in its entirety, with prejudice, that judgment be entered for the Defendants, and that Defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated: August 8, 2014
      New York, New York

Respectfully Submitted,

GORDON & REES, LLP


By:   /s/ Christopher A. Seacord
Mercedes Colwin (MC 3862)
Mark A. Beckman (MB 6750)
Christopher A. Seacord (CS 9795)
90 Broad Street, 23rd Floor
New York, NY  10004
(212) 269-5500

*Attorneys for Defendants and
Counterclaimants*
