UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                              12 Civ. 2988 (RMM) (RER)
JING ZHANG and WOMEN'S RIGHTS IN CHINA,

                   Plaintiffs,
      - against -                                                    ECF CASE

JENZABAR, INC., THE JENZABAR FOUNDATION,
INC., ALL GIRLS ALLOWED, INC., and LING CHAI,

                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ALL GIRLS ALLOWED, INC.,

                   Counter-claimant,

      - against -

JING ZHANG and WOMEN'S RIGHTS IN CHINA,

                   Counterclaim Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
JING ZHANG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Kevin Mintzer                                           Daniel L. Alterman
LAW OFFICE OF KEVIN MINTZER, P.C.                       Nicole Denver
Attorneys for Plaintiffs                                ALTERMAN & BOOP LLP
350 Broadway, Suite 1400                                35 Worth Street – 3rd Floor
New York, New York 10018                                New York, New York
                                                        (212) 226 – 2800
                                                        Attorneys for Plaintiffs

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .................................................................................................................................1

I. JENZABAR WAS ZHANG'S EMPLOYER UNDER THE NYCHRL .........................................1

    A. Direct Employer .................................................................................................................1

    B. Single Employer .................................................................................................................2

    C. Joint Employer ...................................................................................................................4

II. AGA IS NOT ENTITLED TO RELY ON THE RELIGIOUS ORGANIZATION EXEMPTION OF THE NYCHRL...........................................................................................................................5

    A. AGA Has Waived the Religious Exemption Affirmative Defense ............................................5

    B. AGA is Not a Religious Organization within the Meaning of the NYCHRL............................6

    C. The City Law Exemption Does Not Permit AGA's Discriminatory Conduct ...........................7

III. CHAI IS PERSONALLY LIABLE FOR DISCRIMINATING AGAINST ZHANG ..................8

IV. THE UNDISPUTED EVIDENCE ESTABLISHES THAT DEFENDANTS DISCRIMIATED AGAINST ZHANG .........................................................................................................................8

CONCLUSION .............................................................................................................................10

PRELIMINARY STATEMENT

Defendants have failed to demonstrate that there are any material disputes of fact regarding plaintiff Jing Zhang's claims of discrimination on the basis of her religious creed. As discussed below, the undisputed evidence establishes that: 1) defendant Jenzabar Inc. ("Jenzabar") was plaintiff's employer within the meaning of the New York City Human Rights Law ("NYCHRL" or "City Law"); 2) that defendant All Girls Allowed ("AGA") is not entitled to invoke, and cannot qualify for, the religious organization exemption provided by NYCHRL § 8-107(12); 3) defendant Ling Chai is individually liable under the City Law as an employer; and 4) defendants discriminated against Zhang because of her religious beliefs, both during her employment and in connection with Zhang's dismissal. Accordingly, the Court should enter partial summary judgment as to liability in Zhang's favor on her discrimination claims against Jenzabar, AGA, and Chai.

ARGUMENT[1]

I.  JENZABAR WAS ZHANG'S EMPLOYER UNDER THE NYCHRL

   A.  *Direct Employer*

Jenzabar's status as Zhang's employer is demonstrated by uncontested documentary evidence, including multiple employment agreements between the parties. (Pl. Mem. 12-14) Defendants acknowledge this evidence "may be relevant to a breach of contract claim," but they assert, without citing any authority or the pretense of legal reasoning, that it is somehow "irrelevant" to Zhang's discrimination claims. (Def. Mem. 5) However, the contractual nature of employment relationships is no less true in discrimination law than in other aspects of employment law. *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984). Here, it is undisputed that Zhang and

---

[1] Citations to Plaintiff Zhang's Memorandum of Law in Support of her Motion for Partial Summary Judgment and Statement Pursuant to Local Civil Rule 56.1 are "Pl. Mem." and "56.1," respectively. Citations to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and Rule 56.1 Counterstatement are "Def. Mem." and "Def. 56.1," respectively. Citations to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Rule 56.1 Counterstatement are "Pl. Opp. Mem." and "Opp. 56.1," respectively.

1

Jenzabar signed employment agreements, that Zhang performed her duties under those agreements, that Jenzabar paid her salary throughout her employment, and that Jenzabar referred to itself as Zhang's employer on W-2 forms and other corporate documents. These facts establish an employer-employee relationship as a matter of law. (*See* Pl. Mem. 13-15; Pl. Opp. Mem. 5-7) Defendants have not cited a single case in which a court has held that an entity is not an employer despite the existence of executed employment contracts and salary payments pursuant to those agreements.

Defendants claim that Jenzabar purportedly entered into contractual arrangements with Zhang because AGA "was still in its infancy." (Def. Mem. 4, 6) However, AGA's "infancy" did not require Jenzabar to propose multiple employment agreements to plaintiff. Moreover, Jenzabar's motivations do not change the nature of Jenzabar's legal relationship with Zhang. It is true that Zhang's duties related to human rights in China and did not directly relate to Jenzabar's software business. But defendants are wrong in claiming that Zhang admits she never performed duties for Jenzabar. (Def. Mem. 4) Jenzabar was not prohibited from hiring employees to perform functions that were unrelated to its usual revenue-generating activities, and the undisputed evidence in this case demonstrates that Jenzabar did so with respect to Zhang.

Jenzabar is also Zhang's employer under the four-factor test described in *State Div. of Human Rights on Complaint of Emrich v. GTE Corp.*, 487 N.Y.S.2d 234, 235 (4th Dep't 1985). Defendants' application of that test is flawed because defendants continue to ignore the documentary evidence demonstrating that Jenzabar hired Zhang, paid her salary, had the power to terminate her employment, and exercised control over Zhang's conduct. (*See* Pl. Mem. 15-18; Pl. Opp. Mem. 8-11) There is simply no basis for defendants' position that the documents establishing and describing Zhang's relationship with Jenzabar can be disregarded as "irrelevant." (Def. Mem. 5) Because a reasonable jury would have to conclude that Jenzabar directly employed Zhang, she is entitled to summary judgment on this issue.

b.   *Single Employer*

Jenzabar is alternatively liable under the single employer doctrine. As an initial matter, defendants are incorrect in asserting (Def. Mem. 13) that the doctrine is limited to a parent-subsidiary relationship. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 n.9 (2d Cir. 2014).

Defendants also repeatedly mischaracterize the record in the application of the four-factor single employer test. With respect to interrelation of operations, the record is clear that AGA did indeed use Jenzabar's facilities, including its offices, telephone and computers. (56.1 ¶ 55) Defendants claim that these were "donations," but there is no evidence that ownership of any of Jenzabar's property was ever transferred to AGA. And such "donations," even if proven, would merely underscore that Jenzabar and AGA did not operate on an arms length basis. Furthermore, Jenzabar paid the salary and benefits of all employees who regularly worked on AGA matters (56.1 ¶ 57), and other Jenzabar employees also performed work for AGA. For example, Jenzabar's lawyers prepared and submitted AGA's application 501(c)(3) status to the IRS, and Jenzabar paid for the application fee. (56.1 ¶¶ 70-71) Given these facts, defendants' assertion that AGA and Jenzabar did not have overlapping operations must be rejected.

The record is likewise undisputed that AGA and Jenzabar had centralized labor relations. Defendants ignore the uncontroverted evidence that AGA was reliant on Jenzabar's human resources department and personnel policies, including its anti-discrimination policies. *See Saleh v. Pretty Girl, Inc.*, 09-CV-1769, 2012 WL 4511372 (E.D.N.Y. Sept. 28, 2012). Defendants insist that Jenzabar had no role in hiring, supervising or firing Zhang, but that too is wrong. Jenzabar's human resources department was involved in preparing Zhang's Jenzabar employment agreements and ensuring that Zhang agreed to follow Jenzabar's policies and procedures. (56.1 ¶¶ 78-79, 92, 99, 103) Chai and Lee, both Jenzabar employees, supervised Zhang throughout her employment. (56.1

¶¶ 18, 59-62) In addition, when Chai and Lee sought to terminate Zhang, they sought advice from Jenzabar's General Counsel. (56.1 ¶ 141)

Jenzabar and AGA also share common management, ownership and financial control. Defendants point out that Chai is the only Jenzabar officer and director who worked at AGA, but they neglect to mention that Chai was AGA's *only* officer and director during the relevant period. (56.1 ¶ 58) Moreover, Jenzabar effectively owns and controls AGA; the Jenzabar Foundation is AGA's sole member and has complete control of the AGA's board. The Foundation's sole member, in turn, is Jenzabar. (56.1 ¶¶ 36, 49) Defendants claim that AGA and Jenzabar "maintain separate finances and tax returns,"(Def. Mem. 13) but this ignores the reality Chai and her husband, Maginn, have Jenzabar and its Foundation provide funding to AGA whenever they choose to do so (56.1 ¶ 50, 53), and that Jenzabar paid for the salary and benefits for all employees working on AGA business. (56.1 ¶ 57) For these reasons, Jenzabar is liable under the single employer doctrine.

c. *Joint Employer*

Defendants fail to offer any plausible argument for why Jenzabar should not be considered Zhang's joint employer. Defendants do not acknowledge, let alone refute, the cases holding that an entity's payment of an employee's salary is sufficient to support a joint employer finding. *See e.g.*, *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), *aff'd sub nom.*, 375 F. App'x 54 (2d Cir. 2010); *see also* Pl. Mem. 19-20. Defendants instead assert that, even if Jenzabar were to be found a joint employer, it should not be liable because Jenzabar itself did not take any discriminatory actions towards Zhang. (Def. Mem. 31) However, Jenzabar employees – including Chai, Lee and General Counsel Jamison Barr -- were each involved in the discriminatory decision to terminate Zhang's employment. (56.1 ¶¶ 140-41) In addition, to prevail on joint employer theory, Zhang need only demonstrate that Jenzabar "either knew or should have known about any of the alleged discrimination." *Lima v. Adecco &/or Platform Learning, Inc.*, 375 F. App'x 54, 55 (2d

Cir. 2010); *Fried v. LVI Servs., Inc.*, 10 CIV. 9308 JSR, 2011 WL 2119748, *6-7 (S.D.N.Y. May 23, 2011).[2] Defendants do not dispute that Jenzabar employees – including Chai, Lee, Barr and Maginn – were aware that Zhang was being discriminated against because of her religious beliefs. (56.1 ¶¶ 128-130,140-42) Accordingly, Jenzabar is alternatively liable as a joint employer.

II. AGA IS NOT ENTITLED TO RELY ON THE RELIGIOUS ORGANIZATION EXEMPTION OF THE NYCHRL

    A. *AGA Has Waived the Religious Exemption Affirmative Defense*

Defendants acknowledge that they did not plead the religious organization exemption of NYCHRL § 8-107(12) in their Answer to the Amended Complaint, but they contend that they were not required to do because, unlike other sections of the City Law, the section does not specifically use the phrase "affirmative defense." (Def. Mem. 8-107) However, the drafters of the NYCHRL had no reason to use such terminology in § 8-107(12) because it is well recognized that exemptions to remedial statutes are affirmative defenses. *See e.g. United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005).

Defendants should not be permitted to amend its Answer to add an affirmative defense based on § 8-107(12). Defendants maintain that the defense was omitted due to a "typographical error," (Def. Mem. 19) but this ignores defendants' assertions that they acted against Zhang for "legitimate, non-discriminatory and non-retaliatory reasons." (Answer ¶ 119) AGA cannot invoke NYCHRL § 8-107(12) while simultaneously claiming that it acted for non-discriminatory reasons. *See Scheiber v. St. John's Univ.*, 615 N.Y.S.2d 409 (N.Y. 1994) (denying summary judgment on NYSHRL religious organization exemption where defendant did not concede that its actions toward

---

[2] In *Al-Kaysey v. L-3 Servs., Inc.*, 11-CV-6318, 2013 WL 5447830, at *3 (E.D.N.Y. Sept. 27, 2013), this Court stated that joint employment does not lead to vicarious liability and employer are liable for its own actions. This statement is consistent with *Lima*, which also does not suggest that joint employers are vicariously liable for the conduct of their co-employer; rather, as the Second Circuit stated, joint employers may be liable for discrimination about which they knew or should have known but failed to correct. *Lima*, 375 F. App'x at 55.

5

plaintiff were motivated for religious purposes). Defendants further argue that plaintiffs knew AGA was relying on the religious organization exemption and therefore would not be prejudiced by an amendment. However, the document requests that defendants cite that purportedly show plaintiffs' knowledge were relevant to a number of issues, including AGA's relationship with Jenzabar and defendants' non-discrimination policies. Finally, defendants' motion to amend should also be denied because defendants have violated this Court's Individual Rules by filing its motion without requesting a pre-motion conference.

    B.    *AGA is Not a Religious Organization within the Meaning of the NYCHRL*

As discussed in Zhang's main brief, defendants' proposed amendment is also futile because AGA does not qualify as a religious organization within the meaning of NYCHRL § 8-107(12) under any reasonable construction of that provision. (Pl. Mem. 24-31) Defendants' discussion on this issue largely reiterates the same points that plaintiffs addressed in opposing defendants' motion for summary judgment (*See* Pl. Opp. Mem. 18-29) The only new part of defendants' argument is their discussion of *EEOC v. Kamehameha Sch./Bishop Estate*, 990 F.2d 458, 460 (9th Cir. 1993) and *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 618 (9th Cir. 1988), two cases that interpreted the Title VII religious organization narrowly to cover "only to those institutions with extremely close ties to organized religion" such as churches and entities similar to churches. *Kamehameha*, 990 F.2d at 460 (*quoting Townley*, 859 F.2d at 618). Defendants maintain (Def. Mem. 23-24) that this standard cannot apply to the City Law because § 8-107(12), by its terms, applies to a "religious or denominational institution or organization" as well as a charitable or educational organization "which is operated, supervised or controlled by or in connection with a religious organization." But the *Kamehameha/Townley* approach squares perfectly with the City Law's exemption. Construing the phrase "religious or denominational institution or organization" to mean "churches or entities similar to churches," would lead to the conclusion that the City Law's

6

exemption is available only to: (1) churches and similar entities; and (2) charitable or educational organizations that that are supervised, operated or controlled by such entities. This construction is also consistent with *Scheiber*, 615 N.Y.S.2d 409, because the organizations covered by the exemption would not be limited to entities formed under the Religious Corporations Law.

Defendants have offered no plausible reason why the *Kamehameha/Townley* approach should not be adopted as a reasonable interpretation of the NYCHRL that favors plaintiffs. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also Columbus Country Club*, 915 F.2d at 883 (construing religious organization provision of the Fair Housing Act narrowly because of the priority that Congress placed on eradicating housing discrimination). Because it is undisputed that AGA is not a church or similar entity and it is not supervised, operated or controlled by such an entity, AGA is not covered by the NYCHRL § 8-107(12). Moreover, as discussed in plaintiffs' previous submissions, AGA would still not qualify as a religious organization even if the Court applied the approaches discussed in *Spencer v. World Visions, Inc.*, 633 F.3d 723 (9th Cir. 2011) or *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007). (*See* Pl. Mem. 28-29; Pl. Opp. Mem. 24-28)

C.   *The City Law Exemption Does Not Permit AGA's Discriminatory Conduct*

Even if AGA qualified as a religious organization (which it does not), Zhang would still be entitled to summary judgment as to her pre-termination claims against AGA. Defendants do not dispute that the exemption does not protect a religious employer from making biased and derogatory comments about an employee's religious beliefs, *see Logan v. Salvation Army*, 809 N.Y.S.2d 846, 848- 49 (Sup. Ct. N.Y. Cty. 2005), but defendants erroneously maintain that Zhang's claims are "conclusory" and should be disregarded. (Def. Mem. 30) In fact, Zhang has presented undisputed evidence of many of Chai's anti-Catholic comments to Zhang. These statements include Chai's disparagement of the Virgin Mary, Chai's remark that "many Catholics are attacked by evils

7

and become worse," and her comment that Catholicism has had many "problems" and "scandals." (56.1 ¶ 138; *see also* Pl. Opp. 56.1 ¶ 276)

Defendants further argue that § 8-107(12) allows religious employers to try to force an employee to change her religious beliefs (Def. Mem. 30). But nothing in the law – which refers only of "limiting employment" or "giving preference" to persons of the same religion or denomination – provides that an employer is entitled to use the leverage of continued employment to induce an employee into changing her beliefs. Given the Court's obligation to interpret the City Law "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109, it would be improper to construe § 8-107(12) to allow for discriminatory conduct that is not expressly authorized by the statute.

III. CHAI IS PERSONALLY LIABLE FOR DISCRIMINATING AGAINST ZHANG

Defendants next argue that Zhang cannot maintain a discrimination claim under the City Law against Chai as an employer without establishing the liability of an institutional defendant. (Def. Mem. 15-16) However, the only case defendants cite for this assertion, *Turowski v. Triarc Companies, Inc.*, 761 F. Supp. 2d 107, 110 (S.D.N.Y. 2011), addressed claims of individual liability based on an aiding and abetting theory. No court has ever held that an individual's liability as an *employer* is dependent on a finding of institutional liability. *See Henry-Offor v. City Univ. of New York*, 11 CIV. 4695, 2012 WL 2317540, at *6 (S.D.N.Y. June 15, 2012) ("In addition to the possibility of accessorial liability, individuals can be held liable for *primary violations* of the NYCHRL.") (emphasis supplied); *see also Petrisch v. HSBC Bank USA, Inc.*, 07-CV-3303, 2013 WL 1316712, at *20-21 (E.D.N.Y. Mar. 28, 2013) (dismissing aiding and abetting claims against individual defendants because there was no primary liability while separately analyzing claims against same individuals as employers). As defendants do not contest that Chai qualifies as

employer under NYCHRL § 8-107(1)(a), she is liable regardless of the outcome of the claims against Jenzabar and AGA. (*See* Pl. Mem. 20-21; Pl. Opp. Mem. 34-35)

IV. THE UNDISPUTED EVIDENCE ESTABLISHES THAT DEFENDANTS DISCRIMINATED AGAINST ZHANG

Defendants' remaining arguments to avoid summary judgment are without merit. Defendants claim that plaintiff did not plead any claims in her complaint other than her termination, but that is incorrect. The Amended Complaint contains detailed allegations about defendants' attempts to enforce their religious views on Zhang and Chai's anti-Catholic bias. (Am. Compl. ¶¶ 46-74) Plaintiffs were not required to plead a separate "hostile work environment" claim because the City Law does not have "separate standards for 'discrimination' and 'harassment' claims." *Clarke v. InterContinental Hotels Grp., PLC*, 12 CIV. 2671, 2013 WL 2358596 (S.D.N.Y. May 30, 2013). Instead, "there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based on a protected characteristic." *Johnson v. Strive E. Harlem Employment Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (internal quotation omitted).

Contrary to defendants' argument, the record is undisputed that Zhang was treated "less well" because of her religious beliefs. *Mihalik*, 715 F.3d at 110. Defendants claim that Chai "adamantly denies" making anti-Catholic comments to Zhang (Def. Mem. 33), but there is no such denial in the record.[3] Moreover, at least some of Chai's biased comments have been preserved on audio recordings. (56.1 ¶ 138) Likewise, the evidence that Zhang was forced to engage in prayer and religious practices at work is undisputed. Zhang complained to Lee in March 2011 about being required to attend daily prayer meetings and being "forced to participate in spiritual things." (56.1 ¶ 117-18) In response to this complaint, Lee and Chai agreed that Zhang would not be required to

---

[3] Defendants claim that Chai denied making anti-Catholic comments at her deposition. (Def. Mem. 33 (citing Chai Dep. 160)) However, Chai's testified only that she did not recall whether she knew Zhang was Catholic before offering her a job, and that it would not have mattered to Chai as long as Zhang was a believer in Jesus Christ. (Seacord Dec. Ex. E)

9

attend daily meetings. However, Zhang was still required to meet with Lee on weekly basis to "pray together," and to discuss "spiritual matters," including "how God has been at work in our lives." (56.1 ¶ 122) Given this undisputed evidence, a jury would be compelled to find that defendants' violated the NYCHRL by requiring Zhang to engage in unwelcome religious observance in order to retain her job. *See* NYCHRL § 8-107(3); *see also Salemi v. Gloria's Tribeca Inc.*, 982 N.Y.S.2d 458, 459 (1st Dep't 2014).

Finally, defendants' analysis of Zhang's discriminatory termination claim is completely confused. Defendants argue (Def. Mem. 33-34) that Zhang must show, *inter alia*, she held a *bona fide* religious belief that conflicted with an employment requirement. However, the case defendants cite in that context, *Weber v. City of New York*, 973 F. Supp. 2d 227 (E.D.N.Y. 2013), was addressing a claim based on the *failure to accommodate* a religious belief. *Id.* at 263-64. Zhang has not made such a claim with respect to her dismissal. Rather, Zhang's claim is simply that defendants terminated her employment because they were biased against someone with her religious views. *See generally Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 453-55 (S.D.N.Y. 2012) (distinguishing a failure to accommodate religious beliefs claims from other disparate treatment claims). Under the NYCHRL, to prevail on her discriminatory termination claim, Zhang need only demonstrate that her protected status (i.e., religious creed) played a role in defendants' decision to terminate her employment. *See Williams v. New York City Hous. Auth.,* 872 N.Y.S.2d 27, 38 (1st Dep't 2009). As discussed in plaintiff's main brief, the evidence on this issue is not in dispute. (Pl. Mem. 34-35) A reasonable jury would be required to conclude that Zhang's religious creed was, at minimum, a motivating factor in defendants' decision to terminate her employment.

## CONCLUSION

The Court should grant Zhang partial summary judgment as to liability on her claims of religious creed discrimination against defendants Jenzabar, AGA and Chai.

Dated:     New York, New York
           August 29, 2014

                                    LAW OFFICE OF
                                    KEVIN MINTZER, P.C.


                                    By:   /s/ Kevin Mintzer
                                          KEVIN MINTZER
                                    1350 Broadway, Suite 1400
                                    New York, New York 10018
                                    (646) 843 – 8180
                                    km@mintzerfirm.com

                                    ALTERMAN & BOOP LLP

                                    DANIEL L. ALTERMAN
                                    NICOLE DENVER
                                    99 Hudson St., 8th Floor
                                    New York, New York
                                    (212) 226 – 2800

                                    *Attorneys for Plaintiffs*